UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| L. COURTLAND LEE, Derivatively on Behalf of PPG INDUSTRIES INC., | ) ) ) | Case No. |
| Plaintiff, | ) ) | VERIFIED STOCKHOLDER |
| v. | ) ) | DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY AND |
| MICHAEL H. MCGARRY, VINCENT J. MORALES, MARTIN H. RICHENHAGEN, MICHAEL W. LAMACH, MELANIE L. HEALEY, GARY R. HEMINGER, VICTORIA F. HAYNES, HUGH GRANT, MICHELE J. HOOPER, JAMES G. BERGES, STEPHEN F. ANGEL, JOHN V. FARACI, and MARK C. KELLY, | ) ) ) ) ) ) ) ) ) ) ) | UNJUST ENRICHMENT |
| Defendants, | ) ) | |
| -and- | ) ) | |
| PPG INDUSTRIES, INC., a Pennsylvania corporation, | ) ) ) | |
| Nominal Defendant. | ) ) | DEMAND FOR JURY TRIAL |

Plaintiff, by his attorneys, submits this Verified Stockholder Derivative Complaint for Breach of Fiduciary Duty and Unjust Enrichment.  Plaintiff alleges the following on information and belief, except as to the allegations specifically pertaining to plaintiff which are based on personal knowledge.  This complaint is also based on the investigation of plaintiff's counsel, which included, among other things, a review of public filings with the U.S. Securities and Exchange Commission ("SEC") and a review of news reports, press releases, and other publicly available sources.

## NATURE AND SUMMARY OF THE ACTION

1.      This is a stockholder derivative action brought by plaintiff on behalf of nominal defendant PPG Industries, Inc. ("PPG" or the "Company") against certain of its officers and directors for breach of fiduciary duty and unjust enrichment.  These wrongs resulted in hundreds of millions of dollars in damages to PPG's reputation, goodwill, and standing in the business community.  Moreover, these actions have exposed PPG to billions of dollars in potential liability for violations of state and federal law.

2.      This action arises out of the scheme of PPG's former Vice President, Controller, and Principal Accounting Officer, defendant Mark C. Kelly ("Kelly") to manipulate the Company's financial metrics in order meet Wall Street analysts' expectations.  Defendant Kelly, with help from certain insiders, employed a variety of improper accounting techniques to, among other things, delay recognition of certain expenses and misclassify certain categories of income.  By using these measures, defendant Kelly moved expenses from a troubled quarter to one where the Company was performing strongly and that way "smooth" PPG's financials so it would appear that it was consistently meeting expectations.  Due to the Company's ineffective and inadequate internal controls, defendant Kelly was able to pursue his scheme for nearly a year and a half without notice.

3.      It was only after an internal whistleblower raised the alarm that members of PPG's Board of Directors (the "Board") realized the improprieties occurring at the Company.  After receiving the alert, the Audit Committee of the Board conducted an investigation that concerned defendant Kelly directing PPG employees to make improper accounting entries, and that resulted in PPG having to restate certain of its financial statements.  In particular, on June 28, 2018, PPG announced that it was restating its audited consolidated financial statements for the years ended December 31, 2016 and 2017 (and the unaudited quarterly results for the quarters ended December

31, 2016, March 31, 2017, June 30, 2017, September 30, 2017, and December 31, 2017).  PPG also announced that it was issuing corrected financial results for the quarter ended March 31, 2018, as compared to the results for that quarter that had previously been issued in the Company's April 19, 2018 press release.  The Company also admitted that there were material weaknesses in its internal controls over financial reporting.

4.      In the wake of these disclosure, PPG's stock plunged to under $102 per share on July 2, 2018, over 19% below the Company's relevant period stock price high of $121.47 per share. This drop represents a market capitalization loss for PPG of approximately $4.7 billion.

5.      Further, as a direct result of this unlawful course of conduct, PPG was subject of a federal securities class action lawsuit filed in the U.S. District Court for the Central District of California on behalf of investors who purchased PPG's shares.  After defendants' motion to dismiss in that action was denied, the parties settled the matter for $25 million.

6.      The settlement of the class action, however, is not the end of the Company's troubles.  Both the U.S. Department of Justice (the "DOJ") and the SEC have opened investigations into the Company's improper accounting practices.  These investigations have been a drag on PPG as they divert employees' time and resources in addition to costing millions of dollar a quarter.

7.      In light of the above, on August 28, 2018, a concerned PPG stockholder represented by plaintiff's counsel wrote to the Board demanding that it take action, including bringing legal proceedings against specific wrongdoers.  On October 25, 2018, nearly two months later, plaintiff received a letter stating that the Board formed a Special Litigation Committee ("SLC"). Amazingly, the Board appointed two individuals to the SLC that the stockholder specifically identified as having breached their fiduciaries duties, defendants John V. Faraci ("Faraci") and

Melanie L. Healey ("Healey").[1]

8.    On July 11, 2019, plaintiff sent a substantially similar letter to the Board demanding that it investigate and initiate litigation.  Plaintiff forwarded the letter to counsel for the SLC, explaining that plaintiff retained counsel and that since the demand was substantially the same as the concerned stockholder's demand, plaintiff's demand should be wrapped into the SLC's investigation.    On July 22, 2019, after not receiving a response, plaintiff followed up on his correspondence to the SLC's counsel, and attached to the correspondence proof that plaintiff owned PPG stock and continuously owned that stock since 2009.

9.    Plaintiff has not received a response from the Company, the Board, or the SLC's counsel.  In fact, despite the Audit Committee completing its investigation in June 2018, a year and a half later, the self-interested investigation remains pending and, as revealed in conversations between counsel for the SLC and plaintiff, there is no indication that it will end anytime soon.  Pennsylvania has adopted the American Law Institute (the "ALI") principles for responding to litigation demands.  The ALI in turn has an explained that the length of time for an investigation into a litigation demand "*should never exceed several months even when a study is undertaken and seldom should be that long*."  The ALI explained that delay of six months or more "would often prejudice the plaintiff."  Accordingly, the SLC's never-ending conflicted investigation is in violation of Pennsylvania law.

10.    Plaintiff now brings this action against the Individual Defendants to repair the harm that they caused with their faithless actions in light of the SLC's failure to act.

---

[1] The Board would later appoint two new directors in addition to defendants Faraci and Healey to the SLC.  Regardless, half the members of the SLC are tasked with investigating their own wrongdoing and defendants Faraci and Healey's self-interest taints the whole investigation.

## JURISDICTION AND VENUE

11.     Jurisdiction is conferred by 28 U.S.C. §1332.  Complete diversity among the parties exists and the amount in controversy exceeds $75,000, exclusive of interests and costs.

12.     This Court has jurisdiction over each defendant named herein because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District to render the exercise of jurisdiction by the District courts permissible under traditional notions of fair play and substantial justice.

13.     Venue is proper in this Court in accordance with 28 U.S.C. §1391 because: (i) PPG maintains its principal place of business in this District; (ii) one or more of the defendants either resides in or maintains executive offices in this District; (iii) a substantial portion of the transactions and wrongs complained of herein, including the defendants' primary participation in the wrongful acts detailed herein, and aiding and abetting and conspiracy in violation of fiduciary duties owed to PPG, occurred in this District; and (iv) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

**Plaintiff**

14.     Plaintiff L. Courtland Lee was a stockholder of PPG at the time of the wrongdoing complained of, has continuously been a stockholder since that time, and is a current PPG stockholder.  Plaintiff is a citizen of Maryland.

**Nominal Defendant**

15.     Nominal Defendant PPG is a Pennsylvania corporation with principal executive offices located at One PPG Place, Pittsburgh, Pennsylvania.  Accordingly, PPG is a citizen of

Pennsylvania.  PPG manufactures and distributes a broad range of paints, coatings, and specialty materials.  PPG's business is comprised of two reportable business segments: Performance Coatings and Industrial Coatings.  During 2018, the Performance Coatings segment had approximately 27,800 employees and the Industrial Coatings segment had approximately 15,300 employees, on average.

**Defendants**

16.     Defendant Michael H. McGarry ("McGarry") is PPG's Chairman of the Board and has been since September 2016; Chief Executive Officer ("CEO") and has been since September 2015; and a director and has been since July 2015.  Defendant McGarry was also PPG's President from March 2015 to August 2016; Chief Operating Officer from August 2014 to August 2015; Executive Vice President from September 2012 to July 2014; and Senior Vice President, Commodity Chemicals from July 2008 to August 2012.  Defendant McGarry joined PPG in 1981 as an engineer and has served in various other positions of increasing responsibility since that time. Defendant McGarry is named as a defendant in a related securities class action complaint that alleges he violated section 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"). PPG paid defendant McGarry the following compensation as an executive:

| Year | Salary | Stock Awards | Option Awards | Non-Equity Incentive Plan Compensation | Change in Pension Value | All Other Compensation | Total |
|------|--------|--------------|---------------|----------------------------------------|-------------------------|------------------------|-------|
| 2018 | $1,258,333 | $5,334,995 | $2,666,347 | $1,160,000 | $1,223,849 | $140,880 | $11,784,404 |
| 2017 | $1,212,500 | $5,000,022 | $2,500,015 | $1,855,600 | $3,509,536 | $172,188 | $14,249,861 |

Defendant McGarry is a citizen of Pennsylvania.

17.     Defendant Vincent J. Morales ("Morales") is PPG's Senior Vice President and Chief Financial Officer ("CFO") and has been since March 2017.  Defendant Morales was PPG's Vice President, Finance from June 2016 to February 2017; Treasurer from June 2015 to June 2016; and Vice President, Investor Relations from October 2007 to June 2016.  Defendant Morales is

named as a defendant in a related securities class action complaint that alleges he violated section 20(a) of the Exchange Act.  PPG paid defendant Morales the following compensation as an executive:

| Year | Salary | Stock Awards | Option Awards | Non-Equity Incentive Plan Compensation | Change in Pension Value | All Other Compensation | Total |
|------|--------|--------------|---------------|----------------------------------------|-------------------------|------------------------|-------|
| 2018 | $562,500 | $866,866 | $433,287 | $190,000 | $248,630 | $34,983 | $2,336,266 |
| 2017 | $483,333 | $518,123 | $266,490 | $500,000 | $590,573 | $30,579 | $2,389,098 |

Defendant Morales is a citizen of Pennsylvania.

18.    Defendant Martin H. Richenhagen ("Richenhagen") is a PPG director and has been since July 2007.  Defendant Richenhagen is also the Chairman of PPG's Audit Committee and has been since at least March 2017.  PPG paid defendant Richenhagen the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | Total |
|-------------|-------------------|--------------|-------|
| 2018 | $160,000 | $135,093 | $295,093 |
| 2017 | $155,000 | $135,103 | $290,103 |

Defendant Richenhagen is a citizen of Georgia.

19.    Defendant Michael W. Lamach ("Lamach") is a PPG director and has been since April 2015.  Defendant Lamach is also a member of PPG's Audit Committee and has been since at least March 2017.  PPG paid defendant Lamach the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | Total |
|-------------|-------------------|--------------|-------|
| 2018 | $135,000 | $135,093 | $270,093 |
| 2017 | $135,000 | $135,103 | $270,103 |

Defendant Lamach is a citizen of North Carolina.

20.    Defendant Healey is a PPG director and has been since July 2016.  Defendant Healey is also a member of PPG's Audit Committee and has been since at least March 2017.  PPG paid defendant Healey the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | All Other Compensation | Total |
|---|---|---|---|---|
| 2018 | $135,000 | $135,093 | - | $270,093 |
| 2017 | $135,000 | $135,103 | $9,764 | $279,867 |

Defendant Healey is a citizen of Ohio.

21.      Defendant Gary R. Heminger ("Heminger") is a PPG director and has been since July 2017.  Defendant Heminger is also a member of PPG's Audit Committee and has been since at least March 2018.  PPG paid defendant Heminger the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | Total |
|---|---|---|---|
| 2018 | $135,000 | $135,093 | $270,093 |
| 2017 | $94,280 | $101,307 | $195,587 |

Defendant Heminger is a citizen of Ohio.

22.      Defendant Victoria F. Haynes ("Haynes") is a PPG director and has been since October 2003.  Defendant Haynes is also a member of PPG's Audit Committee and has been since at least March 2017.  PPG paid defendant Haynes the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | Total |
|---|---|---|---|
| 2018 | $150,000 | $135,093 | $285,093 |
| 2017 | $135,000 | $135,103 | $270,103 |

Defendant Haynes is a citizen of North Carolina.

23.      Defendant Hugh Grant ("Grant") is PPG's Lead Independent Director and has been since at least March 2017, and a director and has been since September 2005.  PPG paid defendant Grant the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | All Other Compensation | Total |
|---|---|---|---|---|
| 2018 | $180,000 | $135,093 | $10,000 | $325,093 |
| 2017 | $155,000 | $135,103 | - | $290,103 |

Defendant Grant is a citizen of Missouri.

24.   Defendant Michele J. Hooper ("Hooper") is a PPG director and has been since September 1995.  PPG paid defendant Hooper the following compensation as an director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | All Other Compensation | Total |
|---|---|---|---|---|
| 2018 | $135,000 | $135,093 | - | $270,093 |
| 2017 | $135,000 | $135,103 | $18,220 | $288,323 |

Defendant Hooper is a citizen of Illinois.

25.   Defendant James G. Berges ("Berges") is a PPG director and has been since October 2000.  PPG paid defendant Berges the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | Total |
|---|---|---|---|
| 2018 | $155,000 | $135,093 | $290,093 |
| 2017 | $155,000 | $135,103 | $290,103 |

Defendant Berges is a citizen of Florida.

26.   Defendant Stephen F. Angel ("Angel") is a PPG director and has been since December 2010.  PPG paid defendant Angel the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | All Other Compensation | Total |
|---|---|---|---|---|
| 2018 | $135,000 | $135,093 | $10,000 | $280,093 |
| 2017 | $150,000 | $135,103 | $10,000 | $295,103 |

Defendant Angel is a citizen of Connecticut.

27.   Defendant Faraci is a PPG director and has been since October 2012.  PPG paid defendant Faraci the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | All Other Compensation | Total |
|---|---|---|---|---|
| 2018 | $135,000 | $135,093 | $10,000 | $280,093 |
| 2017 | $135,000 | $135,103 | $10,000 | $280,103 |

Defendant Faraci is a citizen of Connecticut.

28.   Defendant Kelly was PPG's Vice President, Controller, and Principal Accounting Officer from September 2013 to April 2018, when he was placed on administrative leave.

Defendant Kelly's employment was terminated in May 2018.  Defendant Kelly is named as a defendant in a related securities class action complaint that alleges he violated sections 10(b) and 20(a) of the Exchange Act.  Defendant Kelly is a citizen of Pennsylvania.

29.     The defendants identified in ¶¶16-17, 28 are referred to herein as the "Officer Defendants."  The defendants identified in ¶¶16, 18-27 are referred to herein as the "Director Defendants."  The defendants identified in ¶¶18-22 are referred to herein as the "Audit Committee Defendants."  Collectively, the defendants identified in ¶¶16-28 are referred to herein as the "Individual Defendants."

## DUTIES OF THE INDIVIDUAL DEFENDANTS

**Fiduciary Duties**

30.     By reason of their positions as officers and directors of the Company, each of the Individual Defendants owed and owe PPG and its stockholders fiduciary obligations of trust, loyalty, good faith, and due care, and were and are required to use their utmost ability to control and manage PPG in a fair, just, honest, and equitable manner.  The Individual Defendants were and are required to act in furtherance of the best interests of PPG and not in furtherance of their personal interest or benefit.

31.     To discharge their duties, the officers and directors of PPG were required to exercise reasonable and prudent supervision over the management, policies, practices, and controls of the financial affairs of the Company.  By virtue of such duties, the officers and directors of PPG were required to, among other things:

(a)     create and maintain effective internal controls over the Company's accounting practices and disclosures to the investing public;

(b)     conduct the affairs of the Company in an efficient, business-like manner in compliance with all applicable laws, rules, and regulations so as to make it possible to provide the

highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock; and

(c)    remain informed as to how PPG conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, make reasonable inquiry in connection therewith, and take steps to correct such conditions or practices and make such disclosures as necessary to comply with applicable laws.

**Breaches of Duties**

32.    The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as officers and directors of PPG, the absence of good faith on their part, and a reckless disregard for their duties to the Company that the Individual Defendants were aware or reckless in not being aware posed a risk of serious injury to the Company.

33.    The Individual Defendants breached their duty of loyalty and good faith by allowing defendants to cause, or by themselves causing, the Company to engage in the wrongdoing detailed herein, including making improper statements and causing or allowing PPG to operate without proper and effective internal controls, which caused PPG to incur substantial damage.

34.    The Individual Defendants, because of their positions of control and authority as officers and/or directors of PPG, were able to and did, directly or indirectly, exercise control over the wrongful acts complained of herein.  The Individual Defendants also failed to prevent the other Individual Defendants from taking such illegal actions.  As a result, and in addition to the damage the Company has already incurred, PPG has expended, and will continue to expend, significant sums of money.

**Additional Duties of the Audit Committee Defendants**

35.     In addition to these duties, under the Audit Committee Charter, the Audit Committee Defendants, defendants Haynes, Healey, Heminger, Lamach, and Richenhagen, owed specific duties to PPG to assist the Board in overseeing the integrity of the Company's financial statements and the Company's compliance with legal and regulatory oversight.  In particular, the Audit Committee Charter provides:

**Audit Committee Purpose**

The purpose of the Committee is to:

- assist the Board of Directors in oversight of

  - the integrity of the Company's financial statements;

  - the Company's compliance with legal and regulatory requirements;

\* \* \*

5.     At least annually, obtain and review a report by the outside auditors describing: the firm's internal quality-control procedures; any material issues raised by the most recent internal quality-control review, or peer review, of the firm, or by any inquiry or investigation by governmental or professional authorities, within the preceding five years, respecting one or more independent audits carried out by the firm, and any steps taken to deal with any such issues; and to assess the auditor's independence considering relationships between the outside auditors and the Company.

\* \* \*

13.     Discuss the annual audited financial statements (Form 10-K) and quarterly financial statements (Form 10-Q) with management and the outside auditors, including the Company's disclosures under "Management's Discussion and Analysis of Financial Condition and Results of Operations." Review the scope and effectiveness of the Company's disclosure controls and procedures, including the certifications made by the CEO and CFO.

\* \* \*

17.     Review with management, the internal auditing department and the outside auditors, as appropriate, (i) major issues regarding accounting principles and financial statement presentations, including any significant changes in the Company's selection or application of accounting principles; (ii) any major issues

as to the adequacy of the Company's internal controls over financial reporting and disclosure controls and procedures, including the outside auditor's report on the Company's internal control over financial reporting; (iii) analyses prepared by management and/or the outside auditors setting forth significant financial reporting issues and judgments made in connection with the preparation of the financial statements, including analyses of the effects of alternative [generally accepted accounting principles ("GAAP")] methods on the financial statements; (iv) the effect of regulatory and accounting initiatives, as well as off-balance sheet structures, on the financial statements of the Company; and (v) discuss any fraud, regardless of materiality, involving management or other employees having a significant role in internal controls over financial reporting.

\*   \*   \*

25.     Oversee the Company's policies and procedures with respect to risk assessment and risk management. Discuss with management significant business, accounting and financial risks and exposures, the Company's policies and procedures for assessing and managing these risks and assure accountability is assigned to management and aligned with the responsibilities of the Board or its Committees.

## PPG ISSUES A SERIES OF IMPROPER STATEMENTS AS A RESULT OF DEFENDANTS' BREACHES OF FIDUCIARY DUTY

36.     On January 19, 2017, PPG announced its fourth quarter and full-year results of the 2016 fiscal year.  For the fourth quarter, the Company reported adjusted net income from continuing operations of $313 million and claimed that adjusted earnings per diluted share was $1.19, an increase of 3%.  For the 2016 fiscal year, PPG reported adjusted net income from continuing operations of $1.55 billion, or $5.82 per diluted share, an increase of 7% over the previous year.  In particular, the press release stated:

- Fourth quarter net sales of $3.5 billion and reported earnings per diluted share from continuing operations of 29 cents

- Fourth quarter adjusted earnings per diluted share from continuing operations of $1.19, up approximately 3 percent including unfavorable impact from foreign currency translation

- Initiated new restructuring program targeting $125 million in annual cost savings, including savings of $40 million to $50 million in 2017

- Continued portfolio optimization with announced acquisition of two European architectural coatings businesses along with divestitures of several non-core glass businesses

- Achieved top-end of cash deployment target for acquisitions and share repurchases, deploying over $2.5 billion in 2015-2016 combined

- Strong financial flexibility remains with cash and short-term investments totaling approximately $1.9 billion at year-end

\* \* \*

Fourth quarter 2016 reported net income from continuing operations was $77 million, or 29 cents per diluted share. Adjusted net income from continuing operations was $313 million, or $1.19 per diluted share. Adjusted net income excludes after-tax charges totaling $236 million, or 90 cents per diluted share. These after-tax charges include: $146 million for business restructuring; $51 million for increases to legacy environmental reserves; $23 million for tax true-ups related to asbestos settlement funding; $5 million for a premium on the early retirement of debt; and $44 million for the loss on the sale of the European fiber glass business offset by a $33 million net gain on the disposals of ownership interests in business affiliates. For the fourth quarter 2016, the effective tax rate was 42.1 percent and the adjusted effective tax rate was 24.5 percent.

Fourth quarter 2015 reported net income from continuing operations was $295 million, or $1.09 per diluted share. Fourth quarter 2015 adjusted net income from continuing operations was $313 million, or $1.16 per diluted share and excluded an after-tax charge for transaction-related costs of $11 million, or 4 cents per diluted share, and an equity affiliate debt-refinancing charge of $7 million, or 3 cents per diluted share. The effective tax rate was 23.3 percent for the fourth quarter 2015, and the adjusted effective tax rate for the quarter was 24.2 percent.

Financial results from the divested flat glass business are presented as discontinued operations for all periods, including a fourth quarter 2016 gain of $1.01 per diluted share from the business divestiture. Historical financial results of the divested fiber glass businesses are included in the Glass segment.

"We delivered fourth quarter and full-year adjusted earnings-per-diluted-share growth despite modest and uneven global economic growth and the impact of significant unfavorable foreign currency translation," said Michael H. McGarry, PPG chairman and chief executive officer. "We achieved these milestones due to improving sales volumes, continued aggressive cost management and ongoing earnings-accretive focused cash deployment.

"For the fourth quarter, our adjusted earnings per diluted share increased by 3 percent, aided by coatings volume growth of nearly 2 percent and despite significant currency translation headwinds," McGarry said. "We achieved our highest volume growth in emerging regions, and by segment our Industrial

Coatings grew global volumes by 5 percent with each business unit realizing similar growth rates. Global sales volumes declined less than 1 percent in Performance Coatings, as automotive refinish and architectural coatings growth was more than offset by lower protective and marine coatings demand stemming from further weakness in marine ship builds.

"For the full year, in addition to 7 percent adjusted earnings-per-share growth, we completed a variety of strategic actions to strengthen our company," McGarry said.

*   *   *

Full-year 2016 net sales from continuing operations were $14.8 billion, consistent with the prior year including an unfavorable foreign currency translation impact of nearly 3 percent, or approximately $400 million. Sales volume growth of 1 percent versus the prior year was supplemented by acquisition-related sales growth of nearly 2 percent, net of sales divested with the European fiber glass business.

The company's 2016 full-year reported net income from continuing operations was $564 million, or $2.11 per diluted share, versus $1.34 billion, or $4.89 per diluted share, in 2015. Full-year 2016 adjusted net income from continuing operations was $1.55 billion, or $5.82 per diluted share, versus $1.49 billion, or $5.43 per diluted share, in 2015, representing an adjusted-earnings-per-diluted-share increase of 7 percent. In 2016, foreign currency translation unfavorably impacted pre-tax income by approximately $70 million. The effective tax rate from continuing operations was 29.1 percent for 2016, versus 23.8 percent for 2015, and the adjusted effective tax rate from continuing operations was 24.5 percent for 2016, versus 24.1 percent for 2015

37.     On February 16, 2017, PPG filed its Annual Report on Form 10-K for the fiscal year ended December 31, 2016 (the "2016 Form 10-K") with the SEC.  The 2016 Form 10-K was signed by defendants McGarry, Angel, Berges, Faraci, Grant, Haynes, Healey, Hooper, Lamach, and Richenhagen.  The 2016 Form 10-K reiterated the Company's "smoothed" out financial results. In particular, for the fiscal year of 2016, PPG reported in the 2016 Form 10-K: (i) adjusted net income from continuing operations of $1.548 billion; (ii) adjusted earnings per diluted share from continuing operations (adjusted earnings per share ("EPS")) of $5.82; (iii) net income from continuing operations of $564 million; (iv) net income per diluted share from continuing operations (EPS) of $2.11; (v) net income of $877 million; (vi) unallocated corporate expenses of $207 million; (vii) a business restructuring charge of $197 million; (viii) selling, general, and

administrative expenses of $3.662 billion, which included total stock-based compensation of $39 million; and (ix) other income of $176 million.

38.     Further, defendants McGarry, Angel, Berges, Faraci, Grant, Haynes, Healey, Hooper, Lamach, and Richenhagen claimed in the 2016 Form 10-K that the statements were prepared in accordance with GAAP and that the Company maintained effective internal controls over financial reporting.  In particular, the 2016 Form 10-K stated:

> We are responsible for the preparation of the financial statements included in this Annual Report. ***The financial statements were prepared in accordance with accounting principles generally accepted in the United States of America*** and include amounts that are based on the best estimates and judgments of management.
> *   *   *
>
> Our evaluation included reviewing the documentation of our controls, evaluating the design effectiveness of our controls and testing their operating effectiveness. Based on this evaluation we have concluded that, as of December 31, 2016, the Company's internal controls over financial reporting were effective.

39.     On April 20, 2017, the Company issued a press release announcing its financial results for the first quarter of the 2017 fiscal year.  Defendant McGarry bragged in the press release that PPG's adjusted earnings per diluted share increased by more than 6% during the first quarter, reaching $1.35.  The press release disclosed the additional key metrics for the first quarter: (i) adjusted net income from continuing operations of $351 million; (ii) net income from continuing operations of $334 million; (iii) net income per diluted share from continuing operations (EPS) of $1.29; (iv) net income of $334 million; (v) net sales of $3.569 billion; (vi) selling, general and administrative expenses of $896 million; and (vii) other income of $11 million, net of other charges.  In particular, the press release stated:

> PITTSBURGH, April 20, 2017 - PPG (NYSE:PPG) today reported first quarter 2017 net sales of about $3.6 billion, up 1 percent versus the prior year. Net sales in local currencies grew nearly 3 percent year-over-year, aided by sales volume growth of 2 percent.  The net impact from business portfolio actions contributed less than 1 percent to net sales, as acquisition-related net sales modestly exceeded

divested net sales stemming from the sale of the European fiber glass business in October 2016.  Selling prices were flat, an improvement versus prior sequential quarters.  Unfavorable foreign currency translation impacted net sales by nearly 2 percent, or about $65 million.

First quarter 2017 net income from continuing operations was $334 million, or $1.29 per diluted share.  First quarter 2017 adjusted net income from continuing operations was $351 million, or $1.35 per diluted share.  Adjusted net income excludes an after-tax pension settlement charge of $14 million, or 5 cents per diluted share, and after-tax transaction related costs of $3 million, or 1 cent per diluted share.  The effective tax rate for the quarter was 24.3 percent, and the adjusted effective tax rate for the quarter was 25.0 percent.

First quarter 2016 net income from continuing operations was $337 million, or $1.25 per diluted share. First quarter 2016 adjusted net income from continuing operations was $341 million, or $1.27 per diluted share. Adjusted net income excluded after-tax charges totaling $4 million, or 2 cents per diluted share, for transaction-related costs and an asset write-down charge. The effective tax rate for the quarter was 24.6 percent, and the adjusted effective tax rate for the quarter was 24.7 percent.

"We continued to deliver higher year-over-year adjusted earnings per diluted share, increasing by more than 6 percent in the first quarter.  This growth was despite moderate but uneven global market demand and the unfavorable impact from foreign currency translation," said Michael McGarry, PPG chairman and chief executive officer.  "Our earnings-per-share growth rate improved versus the fourth quarter 2016, benefiting from our ongoing cash deployment, sales volume growth and continued cost discipline, but negatively impacted by increasing raw material costs, which we partially offset with our initial pricing actions," McGarry said.

40.     On April 24, 2017 the Company filed its Quarterly Report on Form 10-Q for the first quarter ended March 31, 2017 (the "Q1 2017 Form 10-Q") with the SEC.  The Q1 2017 Form 10-Q contained mostly the same financial information discussed in the April 20, 2017 press release regarding the first quarter results, except it separately reported other income of $25 million and other charges of $14 million.  The press release combined these two amounts.

41.     The Q1 2017 Form 10-Q repeated the incorrect statement that the financial statements complied with GAAP and followed SEC reporting requirements.   In particular, the Q1 2017 Form 10-Q stated:

The condensed consolidated financial statements included herein ... have been prepared following the requirements of the Securities and Exchange Commission and accounting principles generally accepted in the United States of America.

42.     The Q1 2017 Form 10-Q also contained a discussion on the evaluation of the Company's disclosures controls and procedures.  According to the filing, these controls were effective.  In particular, the Q1 2017 Form 10-Q stated:

> Evaluation of disclosure controls and procedures. Based on their evaluation as of the end of the period covered by this Form 10-Q, the Company's principal executive officer and principal financial officer have concluded that the Company's disclosure controls and procedures (as defined in Rules 13a-15(e) and 15d-15(e) under the Securities Exchange Act of 1934 (the "Exchange Act")) are effective to ensure that information required to be disclosed by the Company in reports that it files or submits under the Exchange Act is recorded, processed, summarized and reported within the time periods specified in Securities and Exchange Commission rules and forms and to ensure that information required to be disclosed by the Company in the reports that it files or submits under the Exchange Act is accumulated and communicated to the Company's management, including its principal executive and principal financial officers, as appropriate, to allow timely decisions regarding required disclosure.

43.     On July 20, 2017, PPG issued a press release announcing its results for the second quarter of the 2017 fiscal year.  Again, as defendant McGarry pointed out in the press release, the Company's adjusted earnings per diluted share increased 6% year-over-year, reaching $1.83.  Defendant McGarry highlighted the Company's "aggressive cost management."   Other key financial results PPG announced in the press release included: (i) adjusted net income from continuing operations of $472 million; (ii) net income from continuing operations of $504 million; (iii) net income per diluted share from continuing operations (EPS) of $1.95; (iv) net income of $501 million; (v) net sales of $3.806 billion; (vi) selling, general and administrative expenses of $865 million; and (vii) a loss from discontinued operations of $3 million.  Notably, the press release claimed that "[a]ll figures presented for the current and prior year have been recast to reflect PPG's former Glass segment as discontinued operations."

44.     PPG reiterated these results in its Quarterly Report on Form 10-Q for the second quarter ended June 30, 2017 (the "Q2 2017 Form 10-Q"), filed with the SEC on July 21, 2017. The Q2 2017 Form 10-Q also reported "other" income of $72 million.  Like the Q1 2017 Form 10-Q, PPG claimed that "[t]he condensed consolidated financial statements included herein ... have been prepared following the requirements of the Securities and Exchange Commission and accounting principles generally accepted in the United States of America," and that the Company's controls and procedures were effective.

45.     On October 19, 2017, PPG issued a press release announcing its financial results for the third quarter of the 2017 fiscal year.   The key financial metrics the Company disclosed in the press releases were: (i) adjusted net income from continuing operations of $392 million; (ii) adjusted earnings per diluted share from continuing operations (adjusted EPS) of $1.52; (iii) net income from continuing operations of $392 million; (iv) net income per diluted share from continuing operations (EPS) of $1.52; (v) net income of $609 million; (vi) cost of sales of $2.1 billion; and (vii) selling, general and administrative expenses $905 million.

46.     The next day, the Company filed its Quarterly Report on Form 10-Q for the third quarter ended September 30, 2017 (the "Q3 2017 Form 10-Q") with the SEC.  The Q3 2017 Form 10-Q reiterated the financial results of the October 19, 2017 press release.  In addition, the Q3 2017 Form 10-Q claimed that "[t]he condensed consolidated financial statements included herein ... have been prepared following the requirements of the Securities and Exchange Commission and accounting principles generally accepted in the United States of America."  The Q3 2017 Form 10-Q, also contained a statement that the Company's internal disclosures controls and procedures were reviewed and effective.  In particular, the Q3 2017 Form 10-Q stated:

a. Evaluation of disclosure controls and procedures.  Based on their evaluation as of the end of the period covered by this Form 10-Q, the Company's principal

executive officer and principal financial officer have concluded that the Company's disclosure controls and procedures (as defined in Rules 13a-15(e) and 15d-15(e) under the Securities Exchange Act of 1934 (the "Exchange Act")) are effective to ensure that information required to be disclosed by the Company in reports that it files or submits under the Exchange Act is recorded, processed, summarized and reported within the time periods specified in Securities and Exchange Commission rules and forms and to ensure that information required to be disclosed by the Company in the reports that it files or submits under the Exchange Act is accumulated and communicated to the Company's management, including its principal executive and principal financial officers, as appropriate, to allow timely decisions regarding required disclosure.

47.   On January 18, 2018, PPG issued a press release announcing its fourth quarter and full year results of the 2017 fiscal year.  Defendant McGarry highlighted the Company's adjusted earnings per diluted share growth and cost savings, stating:

> For the full year, we delivered adjusted earnings per diluted share growth despite repeated disruptions to the coatings industry supply chain that resulted in significant coatings raw material inflation.  We continued our legacy of aggressively managing our cost structure and delivered $50 million of full year cost savings from our 2016 restructuring program, achieving the top-end of our target.  Strategically, during 2017 we completed our multi-year portfolio transformation with the sale of the U.S. fiber glass business, our last remaining non-core business, and continued our earnings-accretive focused cash deployment.

48.   The Company's financial results for the fourth quarter, according to the press release, were: (i) adjusted net income from continuing operations of $304 million; (ii) adjusted earnings per diluted share from continuing operations (adjusted EPS) of $1.19; (iii) net income from continuing operations of $184 million; (iv) net income per diluted share from continuing operations (EPS) of $0.72; (v) net income of $184 million; (vi) cost of sales of $2.117 billion; (vii) selling, general and administrative expenses of $912 million; and (viii) other income of $17 million, net of other charges.

49.   The full year results for fiscal year of 2017, according to the press release, were: (i) adjusted net income from continuing operations of $1.513 billion; (ii) adjusted earnings per diluted share from continuing operations (adjusted EPS) of $5.87; (iii) net income from continuing

operations of $1.408 billion; (iv) net income per diluted share from continuing operations (EPS) of $5.46; (v) net income of $1.628 billion; (vi) net sales of $14.750 billion; (vii) cost of sales of $8.204 billion; (viii) selling, general and administrative expenses of $3.570 billion; (ix) other income of $90 million, net of other charges; and (x) income from discontinued operations of $220 million.

50.     On February 15, 2018, the Company filed its Annual Report on Form 10-K for the fiscal year ended December 31, 2017 (the "2017 Form 10-K") with the SEC.  The 2017 Form 10-K was signed by defendants McGarry, Morales, Kelly, Angel, Berges, Faraci, Grant, Haynes, Healey, Heminger, Hooper, Lamach, and Richenhagen.  These defendants reiterated the financial results discussed above, except for the following changes due to a $37 million higher net charge than what was announced in the January 18, 2018 press release "related to the enactment of the U.S. Tax Cuts and Jobs Act": (i) adjusted net income from continuing operations of $1.513 billion; (ii) net income from continuing operations of $1.371 billion; (iii) net income per diluted share from continuing operations (EPS) of $5.32; and (iv) net income of $1.591 billion. In addition, the breakdown between other income and other charges was detailed, with PPG reporting other charges of $64 million and other income of $154 million for the 2017 fiscal year.

51.     The 2017 Form 10-K also revised the following financial results for the fourth quarter of 2017 due to a $37 million higher net charge than that announced in the January 18, 2018 press release "related to the enactment of the U.S. Tax Cuts and Jobs Act": (i) net income from continuing operations of $147 million; (ii) net income per diluted share from continuing operations (EPS) of $0.58; and (iii) net income of $147 million.

52.     The 2017 Form 10-K also claimed that the Company's financial results were prepared in accordance with GAAP and that the Company's internal controls over financial

reporting were effective.  In particular, the 2017 Form 10-K stated in the "Management Report: Responsibility for Preparation of the Financial Statements and Establishing and Maintaining Adequate Internal Control Over Financial Reporting" section:

> We are responsible for the preparation of the consolidated financial statements included in this Annual Report.  The consolidated financial statements were prepared in accordance with accounting principles generally accepted in the United States of America and include amounts that are based on the best estimates and judgments of management.

> We are also responsible for establishing and maintaining adequate internal control over financial reporting as defined in Rules 13a-15(f) and 15d-15(f) under the Securities Exchange Act of 1934, as amended. Internal control over financial reporting, no matter how well designed, have inherent limitations.  Therefore, a system of internal control over financial reporting can provide only reasonable assurance and may not prevent or detect misstatements.  In addition, because of changing conditions, there is risk in projecting any evaluation of internal controls to future periods.

> We conducted an evaluation of the effectiveness of the Company's internal control over financial reporting as of December 31, 2017.  In making this evaluation, we used the criteria set forth by the Committee of Sponsoring Organizations of the Treadway Commission (COSO) in *Internal Control - Integrated Framework (2013)*.  Our evaluation included reviewing the documentation of our controls, evaluating the design effectiveness of our controls and testing their operating effectiveness.  Based on this evaluation we have concluded that, as of December 31, 2017, the Company's internal controls over financial reporting were effective.

> *   *   *

> Based on their evaluation as of the end of the period covered by this Form 10-K, the Company's principal executive officer and principal financial officer have concluded that the Company's disclosure controls and procedures (as defined in Rules 13a-15(e) and 15d-15(e) under the Securities Exchange Act of 1934 (the "Exchange Act")) are effective to ensure that information required to be disclosed by the Company in reports that it files or submits under the Exchange Act is recorded, processed, summarized and reported within the time periods specified in Securities and Exchange Commission rules and forms and to ensure that information required to be disclosed by the Company in the reports that it files or submits under the Exchange Act is accumulated and communicated to the Company's management, including its principal executive and principal financial officers, as appropriate, to allow timely decisions regarding required disclosure.

## REASONS THE STATEMENTS WERE IMPROPER

53.     The statements referenced above were each improper when made because they failed to disclose and misrepresented the following material, adverse facts, which the Individual Defendants knew, consciously disregarded, or were reckless in not knowing:

(a)     That PPG's financial results were materially misstated because of defendant Kelly's illicit earnings management scheme and improper accounting entries, and the remaining Individual Defendants' failure to implement effective internal controls, including, among other matters, misstating adjusted net income from continuing operations, adjusted net income from continuing operations per diluted share (adjusted EPS), net income from continuing operations, net income from continuing operations per diluted share (EPS), net sales, other income, net income, and PPG's amortization and selling, general and administrative expenses.

(b)     PPG's financial results and statements were not presented in accordance with GAAP and that those financial statements/results were materially misstated because of defendant Kelly's illicit earnings management scheme and improper accounting entries.

(c)     PPG's internal controls over financial reporting were not effective as of the time these statements were issued and a material weakness existed in the Company's internal control over financial reporting.

(d)     Defendant Kelly "directed his subordinates to improperly override the Company's internal controls during the Company's financial close process, which directions were followed and not disclosed to others in senior management, the Audit Committee or the Company's independent registered public accounting firm and not otherwise detected by the Company's internal controls."

## THE TRUTH SLOWLY EMERGES

54.     The truth behind the Company's business prospects and Individual Defendants' wrongdoing began to emerge when on April 19, 2018, PPG issued a press release announcing the results for the first quarter of the 2018 fiscal year.  In the press release, PPG announced: (i) adjusted net income from continuing operations of $350 million; (ii) adjusted earnings per diluted share from continuing operations (adjusted EPS) of $1.39; (iii) net income from continuing operations of $347 million; (iv) net income per diluted share from continuing operations (EPS) of $1.38; (v) net income of $353 million; (vi) selling, general and administrative expenses of $903 million; (vii) an amortization expense of $34 million.

55.     The press release also contained the first hints of defendant Kelly's scheme, though presented in an improper fashion.  In particular, the press release stated:

> As PPG's earnings release was being finalized, the company received a report through its internal reporting system concerning potential violations of PPG's accounting policies and procedures regarding the failure to accrue certain specified expenses in the first quarter.  Based on preliminary review, the company identified approximately $1.4 million of expense that should have been accrued in the first quarter, and the earnings reported in this release reflect the accrual of such $1.4 million of expenses.  The report also alleges that there may have been other unspecified expenses, potentially up to $5 million in the aggregate, that were improperly not accrued in the first quarter.

56.     PPG also announced that the Audit Committee would conduct an investigation into the potential accounting violations.

57.     On May 10 2018, PPG issued a press release providing an update on the status of the Audit Committee's investigation.  The press release explained that PPG's Audit Committee found evidence that improper accounting entries were made by certain employees at the direction of defendant Kelly.   As a result, the Company's financial statements for the 2017 fiscal year and quarterly reports during that year should no longer be relied upon and the Company was unable to timely file its quarterly report for the first quarter of the 2018 fiscal year.

58.    The Audit Committee investigation identified the following matters relating to the financial periods in 2017: (i) improper reclassifications of gains from income from discontinued operations to income from continuing operations of $2.1 million and $4.7 million, pre-tax, for second and fourth quarters of 2017, respectively; (ii) improper shifting of expenses from one quarter to others, resulting in $6.9 million in expenses that should have been reported in second quarter of 2017, but were instead shifted to the third and fourth quarters of 2017.

59.    PPG separately noted that, apart from the investigation, the Company had identified certain inadvertent errors with respect to the first quarter of 2018 resulting in a net decrease of income from continuing operations of $7.8 million, pre-tax.

60.    On the news of the intentional manipulation of the Company's financial results, PPG's market capitalization dropped over $1.4 billion on May 11, 2018, going from $26.5 billion to just under $25.1 billion.  The Company's market capitalization would continue to slide to under $25.1 billion from a relevant period market capitalization high of nearly $31 billion on January 26, 2018, a drop of nearly 19%.

61.    On June 28, 2019, PPG announced that the Audit Committee had completed its investigation and the Company needed to restate its financial results.  In particular, PPG was restating its audited consolidated financial statements for the years ended December 31, 2016 and 2017 (and the unaudited quarterly results for the quarters ended December 31, 2016, March 31, 2017, June 30, 2017, September 30, 2017, and December 31, 2017). PPG also announced that it was issuing corrected financial results for the quarter ended March 31, 2018, as compared to the results for that quarter that had previously been issued in the Company's April 19, 2018 press release.

62.     PPG further stated that it had concluded that its "consolidated financial statements for the year ended December 31, 2016 included in the Original Filing and the related report of [PPG's independent registered public accounting firm, PricewaterhouseCoopers LLP], and for the final quarterly and year-to-date period in 2016, should no longer be relied upon because of certain misstatements contained in those financial statements."

63.     Also on June 28, 2018, PPG filed its amended Annual Report on Form 10-K/A for the 2017 fiscal year (the "2017 Form 10-K/A") and its belated Quarterly Report on Form 10-Q for the first quarter ended March 31, 2018 (the "Q1 2018 Form 10-Q" and, together with the 2017 Form 10-K/A, the "Restatement") with the SEC.   As part of the Restatement, PPG included an explanatory note in the 2017 Form 10-K/A detailing the background of the Restatement and the Audit Committee investigation.   The investigation had identified numerous categories of misstatements in the originally reported financial results for the years ended December 31, 2016 (FY 2016) and December 31, 2017 (FY 2017), and for the quarters ended December 31, 2016 (Q4 2016), March 31, 2017 (Q1 2017), June 30, 2017 (Q2 2017), September 30, 2017 (Q3 2017), December 31, 2017 (Q4 2017), and March 31, 2018 (Q1 2018).   As a result of the investigation, the following changes to the Company's financial statements were required:

(a)     for Q4 2016 and FY 2016, net income from continuing operations decreased by $4 million, or $0.01 per diluted share;

(b)     for Q1 2017, net income from continuing operations increased by $3 million, or $0.01 per diluted share;

(c)     for Q2 2017, net income from continuing operations decreased by $7 million, or $0.03 per diluted share;

(d)     for Q3 2017, net income from continuing operations increased by $1 million, or less than a cent per diluted share;

(e)     for Q4 2017, net income from continuing operations increased by $1 million, or less than a cent per diluted share;

(f)     for the 2017 fiscal year, net income from continuing operations decreased by $2 million, or $0.01 per diluted share; and

(g)     for Q1 2018, net income from continuing operations increased by $0.3 million, prior to taxes.

64.     In addition, as part of the Restatement, the Company reevaluated its internal controls and found them to be ineffective and that there were material weaknesses in the internal controls as of December 31, 2016, March 31, 2017, June 30, 2017, September 30, 2017, and December 31, 2017.

65.     The following table provides a list of the misstated quarterly and yearly filings and the Individual Defendants that signed each statement:

| PPG FINANCIAL STATEMENTS & DEFENDANT SIGNATURES | | | |
|---|---|---|---|
| *Form* | *Reporting Period* | *File Date* | *Signatories* |
| 10-K | Fiscal Year Ended 12/31/2016 | 2/16/2017 | Defendant McGarry<br>Former CFO Sklarsky<br>Defendant Angel<br>Defendant Berges<br>Defendant Faraci<br>Defendant Grant<br>Defendant Haynes<br>Defendant Healey<br>Defendant Hooper<br>Defendant Lamach<br>Defendant Richenhagen |
| 10-Q | Fiscal Quarter Ended 3/31/2017 | 4/24/2017 | Defendant Morales<br>Defendant Kelly |
| 10-Q | Fiscal Quarter Ended 6/30/2017 | 7/21/2017 | Defendant Morales<br>Defendant Kelly |
| 10-Q | Fiscal Quarter Ended 9/30/2017 | 10/20/2017 | Defendant Morales<br>Defendant Kelly |

| 10-K | Fiscal Year Ended 12/31/2017 | 2/15/2018 | Defendant McGarry<br>Defendant Morales<br>Defendant Kelly<br>Defendant Angel<br>Defendant Berges<br>Defendant Faraci<br>Defendant Grant<br>Defendant Haynes<br>Defendant Healey<br>Defendant Heminger<br>Defendant Hooper<br>Defendant Lamach<br>Defendant Richenhagen |
|------|------------------------------|-----------|----------------------------------|

66.     Soon after disclosing the Company's accounting misstatements, investors sued PPG, defendants McGarry, Morales, and Kelly for securities fraud in the U.S. District Court for the Central District of California.  The defendants in the securities class action moved to dismiss that action.  Judge R. Gary Klausner denied the defendants' motion on December 21, 2018.  In doing so, Judge Klausner rejected that the improper statements detailed above were not material, pointing out in particular that the Company had a reputation of being able to meet or exceed expectations and that defendant Kelly's smoothing scheme allowed PPG to report adjusted EPS that outperformed consensus estimates.  In particular, the Court stated:

> For example, PPG initially reported an adjusted EPS of $1.19 for the fourth quarter of 2016, which outperformed the consensus estimate of $1.18.  (FAC ¶ 38.) Following the Restatement, however, the adjusted EPS for the fourth quarter of 2016 was below the consensus estimate at $1.17.  (Id.) Likewise, PPG initially reported an adjusted EPS of $1.83 for the second quarter of 2017, surpassing consensus estimates of $1.82, but the actual adjusted EPS was $1.80 after the misstatements were corrected.  (FAC ¶¶ 40, 43.) Plaintiffs assert that PPG had a reputation for consistently meeting or exceeding consensus estimates, (FAC ¶ 30-31), that adjusted EPS is one of the key financial metrics upon which PPG's securities analysts focus, (FAC ¶ 28), and that it is a metric "highlighted prominently in each of PPG's earning releases" (FAC ¶ 37)…. Accordingly, the Court find that Plaintiffs adequately allege that the misstatements were material.

67.     The Court also held that the defendants acted with scienter and that defendant Kelly's scienter could be imputed to PPG.  As a result, the parties entered into the discovery phase

of the litigation.

68.     On June 2, 2019, the parties in the securities class action filed settlement papers with the Court, revealing that they agreed to settle matter for $25 million.

69.     In addition, the Company has announced that both the SEC and the DOJ are investigating it as a result of the improper statements described herein.

70.     The costs of the scheme has also cost the Company millions of dollar a quarter. According to PPG's filings with the SEC, the Company has spent at least $18 million on the accounting investigation, as shown in the table below:

| Quarter | Accounting Investigation Cost ($mm) | Form |
|---------|-------------------------------------|------|
| Q1 2019 | $ (4.00) | 10-Q filed 4/19/2019 |
| Q4 2018 | $ (3.00) | 10-K filed 2/21/2019 |
| Q3 2018 | $ (2.00) | 10-Q filed 10/19/2018 |
| Q2 2018 | $ (9.00) | 10-Q filed 7/20/2018 |
| **Total:** | **$ (18.00)** | |

71.     The Company will continue to incur costs as it responds to the SEC and DOJ investigations.

## DAMAGES TO PPG

72.     As a result of the Individual Defendants' improprieties, PPG disseminated improper public statements.  These improper statements have devastated PPG's credibility as reflected by the Company's almost $31 billion, or nearly 19%, market capitalization loss.

73.     PPG's performance issues also damaged its reputation within the business community and in the capital markets.  In addition to price, PPG's current and potential customers consider a company's ability to have effective internal controls and provide accurate financial reports to the market.  PPG's ability to raise equity capital or debt on favorable terms in the future

is now impaired.  In addition, the Company stands to incur higher marginal costs of capital and debt because the improper statements and misleading projections disseminated by the Individual Defendants have materially increased the perceived risks of investing in and lending money to the Company.

74.    Further, as a direct and proximate result of the Individual Defendants' actions, PPG has expended, and will continue to expend, significant sums of money.  Such expenditures include, but are not limited to:

(a)    costs incurred from defending and paying the settlement in the class action for violations of federal securities laws, including any insurance deductibles and an increase in insurance expenses;

(b)    costs incurred from the Audit Committee's investigation;

(c)    costs incurred from responding and defending the DOJ and SEC investigations; and

(d)    costs incurred from compensation and benefits paid to the defendants who have breached their duties to PPG.

## DERIVATIVE AND DEMAND MADE ALLEGATIONS

75.    Plaintiff brings this action derivatively in the right and for the benefit of PPG to redress injuries suffered, and to be suffered, by PPG as a direct result of breaches of fiduciary duty and unjust enrichment, as well as the aiding and abetting thereof, by the Individual Defendants. PPG is named as a nominal defendant solely in a derivative capacity.  This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

76.    Plaintiff will adequately and fairly represent the interests of PPG in enforcing and prosecuting its rights.

77.     Plaintiff was a stockholder of PPG at the time of the wrongdoing complained of, has continuously been a stockholder since that time, and is a current PPG stockholder.

78.     By means of a letter dated July 11, 2019, plaintiff made a litigation demand on the Board (the "Demand").   In the Demand, plaintiff explained that the Individual Defendants breached their fiduciary duties to the Company, as detailed herein, and demanded that the Board remedy the wrongdoing, including commencing legal proceedings against those responsible.  A true and correct copy of the Demand is attached hereto as Exhibit A.

79.     The Demand was substantially similar to a demand sent by a concerned PPG stockholder represented by plaintiff's counsel on August 28, 2018 (the "Original Demand").  A true and correct copy of the Original Demand is attached hereto as Exhibit B.

80.     On October 25, 2018, plaintiff's counsel received a letter from Mark P. Goodman of Debevoise & Plimpton LLP.  Mr. Goodman stated that the Board formed an SLC consisting of defendants Faraci and Healey.  He also stated that the SLC retained Debevoise & Plimpton LLP as its legal counsel.  A true and correct copy of the October 25, 2018 letter is attached as Exhibit C.

81.     On January 2, 2019, plaintiff's counsel sent a letter to Mr. Goodman asking for an update on the status of the SLC's investigation, noting that over four months had passed since the concerned PPG stockholder made the Original Demand.  A true and correct copy of the January 2, 2019 letter is attached hereto as Exhibit D.

82.     Plaintiff's counsel received a perfunctory response on January 16, 2019, stating only that the SLC "is conducting its investigation … and we will inform you when it has completed its investigation and determined whether pursuing any claims asserted is in the best interests of [PPG]."  A true and correct copy of the January 16, 2019 letter is attached hereto as Exhibit E.

83.     Plaintiff's counsel spoke with the SLC's counsel on June 4, 2019.  The SLC's counsel stated that the SLC's investigation was still ongoing and that there was no expected completion date.   The SLC's counsel informed plaintiff's counsel that two new members of the Board recently joined the SLC, Catherine R. Smith and Steven A. Davis.  The SLC confirmed these appointments to plaintiff's counsel via letter dated June 6, 2019.

84.     On July 11, 2019, plaintiff's counsel forwarded the Demand to counsel for the SLC. Plaintiff's counsel explained that plaintiff retained it and that since the Demand was substantially the same as Original Demand, the SLC should consider the Demand as part of its investigation. On July 22, 2019, after not receiving a response, plaintiff's counsel followed up on his correspondence to the SLC's counsel, and attached to the correspondence proof that plaintiff owned PPG stock and continuously owned that stock since 2009.  A true and correct copy of e-mail string is attached hereto as Exhibit F.

85.     Plaintiff finally received a response from the SLC's counsel on August 6, 2019.   In the letter, the SLC's counsel confirmed that the SLC was also investigating the Demand.  A true and correct copy of the August 6, 2019 letter is attached hereto as Exhibit G.

86.     Pennsylvania has adopted certain sections of the American Law Institute Principles of Corporate Governance: Analysis and Recommendations ("ALI Principles").   Concerning derivative actions, Pennsylvania has specifically adopted ALI Principles sections 7.02-7.10 and 7.13. *Cuker v. Mikalauskas*, 547 Pa. 600, 614, 692 A.2d 1042, 1049 (1997)

87.     ALI Principles section 7.03 addresses the requirement that stockholders make a demand on the Board before instituting a derivative action.  In particular, section 7.03 states, in relevant part:

(a) Before commencing a derivative action, a holder or a director should be required to make a written demand upon the board of directors of the corporation, requesting

it to prosecute the action or take suitable corrective measures, unless demand is excused under § 7.03(b). The demand should give notice to the board, with reasonable specificity, of the essential facts relied upon to support each of the claims made therein.

\* \* \*

(c) Demand on shareholders should not be required.

(d) Except as provided in § 7.03(b), the court should dismiss a derivative action that is commenced prior to the response of the board or a committee thereof to the demand required by § 7.03(a), **unless the board or committee fails to respond within a reasonable time**.

88.     Here, the Board has failed to respond to plaintiff's demand in a reasonable time. Ten months have passed since plaintiff's counsel sent the Original Demand to the Board.  Over a month has passed since plaintiff sent the Demand that was substantially identical to the Original Demand.  Comment (f) to ALI Principles section 7.03 provides sixty days as an example of a reasonable amount of time to respond, and explicitly states that a delay of six months or more "would often prejudice the plaintiff."  The comment continues that "If the corporation fails to undertake **and complete** its inquiry within a reasonable period following demand (**which period should never exceed several months even when a study is undertaken and seldom should be that long**), the plaintiff may file the action, and it should not be deemed premature."  The Board's inquiry has improperly lasted more than several months (indeed, lasting more than ten months). In addition, the SLC shows no sign of concluding its investigation in the near future, and instead the Board recently appointed new directors to the SLC.  Accordingly, plaintiff has satisfied Pennsylvania's demand requirement, and may pursue this action on behalf of the Company.

89.     Plaintiff has not made any demand on the other stockholders of PPG to institute this action since such demand would be a futile and useless act for at least the following reasons:

(a)     PPG is a publicly held company with over 236 million shares outstanding and thousands of stockholders as of March 31, 2019;

- 33 -

(b)     making demand on such a number of stockholders would be impossible for plaintiff who has no way of finding out the names, addresses, or phone numbers of stockholders; and

(c)     making demand on all stockholders would force plaintiff to incur excessive expenses, assuming all stockholders could be individually identified.

## COUNT I

### Against the Individual Defendants for Breach of Fiduciary Duty

90.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

91.     The Individual Defendants owed and owe PPG fiduciary obligations.  By reason of their fiduciary relationships, the Individual Defendants owed and owe PPG the highest obligation of good faith, fair dealing, loyalty, and due care.

92.     The Individual Defendants and each of them, violated and breached their fiduciary duties of candor, good faith, and loyalty.

93.     As a direct and proximate result of the Individual Defendants' breaches of their fiduciary obligations, PPG has sustained significant damages, as alleged herein.  As a result of the misconduct alleged herein, these defendants are liable to the Company.

94.     Plaintiff, on behalf of PPG, has no adequate remedy at law.

## COUNT II

### Against the Individual Defendants for Unjust Enrichment

95.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

96.     By their wrongful acts and omissions, the Individual Defendants were unjustly enriched at the expense of and to the detriment of PPG.  The Individual Defendants were unjustly

enriched as a result of the compensation and director remuneration they received while breaching fiduciary duties owed to PPG.

97.     Plaintiff, as a stockholder and representative of PPG, seeks restitution from these defendants, and each of them, and seeks an order of this Court disgorging all profits, benefits, and other compensation obtained by these defendants, and each of them, from their wrongful conduct and fiduciary breaches.

98.     Plaintiff, on behalf of PPG, has no adequate remedy at law.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiff, on behalf of PPG, demands judgment as follows:

A.     Against all of the defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the defendants' breaches of fiduciary duties and unjust enrichment;

B.     Directing PPG to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect PPG and its stockholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for stockholder vote, resolutions for amendments to the Company's Bylaws or Articles of Incorporation and taking such other action as may be necessary to place before stockholders for a vote of the following corporate governance policies:

1.     a proposal to strengthen the Company's internal controls over financial reporting and disclosure processes;

2.      a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater stockholder input into the policies and guidelines of the Board; and

3.      a provision to permit the stockholders of PPG to nominate at least three candidates for election to the Board;

C.      Extraordinary equitable and/or injunctive relief as permitted by law, equity, and state statutory provisions sued hereunder, including attaching, impounding, imposing a constructive trust on, or otherwise restricting the proceeds of defendants' trading activities or their other assets so as to assure that plaintiff on behalf of PPG has an effective remedy;

D.      Awarding to PPG restitution from defendants, and each of them, and ordering disgorgement of all profits, benefits, and other compensation obtained by the defendants;

E.      Awarding to plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

F.      Granting such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury.

Dated:  January 16, 2020

LAW OFFICE OF ALFRED G. YATES, JR. P.C.

Alfred G. Yates, Jr. (PA 17419)
Gerald L. Rutledge (PA 62027)

300 Mt. Lebanon Blvd., Suite 206-B
Pittsburgh, PA 15234
Telephone: (412) 391-5164
Facsimile: (412) 471-1033
E-mail: yateslaw@aol.com

ROBBINS LLP
BRIAN J. ROBBINS
STEPHEN J. ODDO
5040 Shoreham Place

San Diego, CA 92122
Telephone: (619) 525-3990
Facsimile: (619) 525-3991
E-mail: brobbins@robbinsllp.com
         soddo@robbinsllp.com

Attorneys for Plaintiff

1362755