UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

------------------------------------------------------------------------x
L. COURTLAND LEE, Derivatively on Behalf of PPG : 
INDUSTRIES, INC., :
 :
                    Plaintiff, :
                 v. :
 :
MICHAEL H. MCGARRY, VINCENT J. MORALES, :
MARTIN H. RICHENHAGEN, MICHAEL W. LAMACH, :  Case No. 2:20-cv-00075-WSS
MELANIE L. HEALEY, GARY R. HEMINGER, :
VICTORIA F. HAYNES, HUGH GRANT, MICHELE J. :  Judge William S. Stickman IV
HOOPER, JAMES G. BERGES, STEPHEN F. ANGEL, :
JOHN V. FARACI, and MARK C. KELLY, :
 :
                Defendants, :
 :
                -and- :
 :
PPG INDUSTRIES, INC., a Pennsylvania corporation, :
 :
                Nominal Defendant. :
------------------------------------------------------------------------x
BRENDA RUBIN, Derivatively on Behalf of PPG :
INDUSTRIES, INC., :
 :
                    Plaintiff, :
               v. :
 :
MICHAEL H. MCGARRY, VINCENT J. MORALES, :
MARTIN H. RICHENHAGEN, MICHAEL W. LAMACH, :  Case No. 2:20-cv-00313-WSS
MELANIE L. HEALEY, GARY R. HEMINGER, :
VICTORIA F. HAYNES, HUGH GRANT, MICHELE J. :
HOOPER, JAMES G. BERGES, STEPHEN F. ANGEL, :
JOHN V. FARACI, and MARK C. KELLY, :
 :
                Defendants, :
 :
                -and- :
 :
PPG INDUSTRIES, INC., a Pennsylvania corporation, :
 :
                Nominal Defendant. :
 :
------------------------------------------------------------------------x

| | |
|---|---|
| ALEXANDER H. LINDSAY, JR. and<br>CHARLES R. BLACKBURN, Derivatively on Behalf of<br>PPG INDUSTRIES, INC., | :<br>:<br>: |
| Plaintiffs, | :<br>: |
| v. | : |
| | : |
| MICHAEL H. McGARRY, CHARLES E. BUNCH,<br>VINCENT J. MORALES, MARK C. KELLY, STEPHEN<br>F. ANGEL, JAMES G. BERGES, JOHN V. FARACI,<br>HUGH GRANT, VICTORIA F. HAYNES, MELANIE<br>L. HEALEY, GARY R. HEMINGER, MICHELE J.<br>HOOPER, MICHAEL W. LAMACH, ROBERT<br>MEHRABIAN, MARTIN H. RICHENHAGEN, ROBERT<br>RIPP, THOMAS J. USHER and DAVID R. WHITWAM, | :  Case No. 2:20-cv-00253-WSS<br>:<br>:<br>:<br>:<br>:<br>:<br>: |
| Defendants, | : |
| -and- | :<br>: |
| PPG INDUSTRIES, INC., a Pennsylvania corporation, | :<br>: |
| Nominal Defendant. | :<br>: |
| ------------------------------------------------------------------------x | |

## REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

Colin J. Goodman
FLANNERY | GEORGALIS, LLC
The Gulf Tower
707 Grant Street, Suite 1745
Pittsburgh, Pennsylvania 15219

Mark P. Goodman
Elliot Greenfield
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022

*Attorneys for the Special Litigation
Committee of the Board of Directors of
PPG Industries, Inc.*

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT .................................................................................................................................. 2

I.     THE SLC MEMBERS ARE DISINTERESTED AND INDEPENDENT. ........................ 2

        A.     The Environmental Demand. ................................................................................. 2

        B.     The Accounting Demands ...................................................................................... 4

II.    THE SLC ACTED IN GOOD FAITH AND CONDUCTED A REASONABLE INVESTIGATION .............................................................................................................. 7

        A.     The Addition of Ligocki to the SLC Is Not Indicative of Bad Faith. ..................... 7

        B.     Plaintiffs' Suggested Interviews Do Not Undermine the Reasonableness of the SLC's Investigation ......................................................................................... 8

        C.     Plaintiffs Cannot Challenge the SLC's Cost Benefit Analysis. ........................... 10

III.   THE COURT SHOULD DENY PLAINTIFFS' UNTIMELY AND IMPROPER REQUEST FOR ADDITIONAL DISCOVERY. ............................................................. 12

CONCLUSION ............................................................................................................................ 13

# **TABLE OF AUTHORITIES**

**CASES**

*Auerbach v. Bennett*,
　393 N.E.2d 994 (N.Y. 1979)................................................................................................7, 10

*Braun v. Herbert*,
　180 A.3d 482 (Pa. Super. Ct. 2018).................................................................................1, 4, 5

*City of Orlando Police Pension Fund v. Page*,
　970 F. Supp. 2d 1022 (N.D. Cal. 2013) ....................................................................................8

*Cuker v. Mikalauskas*,
　547 Pa. 600 (1997) ....................................................................................................................2

*In re Comverse Technology, Inc. Derivative Litigation*,
　56 A.D.3d 49 (N.Y. App. Div. 2008) ...................................................................................5, 6

*LeMenestrel v. Warden*,
　964 A.2d 902 (Pa. Super. Ct. 2008)......................................................................................4, 5

*Peller v. The Southern Co.*,
　707 F. Supp. 525 (N.D. Ga. 1988) ............................................................................................8

*Pittsburgh History & Landmarks Found. v. Ziegler*,
　200 A.3d 58 (Pa. 2019) ...........................................................................................................12

*Zapata Corp. v. Maldonado*,
　430 A.2d 779 (Del. 1981) .........................................................................................................8

**STATUTES**

15 Pa. C.S. § 1781..........................................................................................................................6

15 Pa. C.S. § 1783.................................................................................................................1, 7, 8

**OTHER AUTHORITIES**

ALI Principles of Corp. Governance ...................................................................................2, 6, 12

Pa. R.C.P. 4003.3 ..........................................................................................................................13

The SLC of nominal defendant PPG submits this reply memorandum in support of its motion to dismiss the Actions pursuant to 15 Pa. C.S. § 1783(f)(2).[1]

## PRELIMINARY STATEMENT

Plaintiffs' contrived and baseless assertions about the SLC and its investigation provide no basis for the Court to deny the SLC's motion to dismiss the Actions. Throughout their opposition brief, Plaintiffs rely on unsupported speculation, take liberties with the facts and ignore binding precedent.

*First*, Plaintiffs' challenge to the disinterestedness of SLC members John V. Faraci and Melanie L. Healey on the basis that they served on the Board or Audit Committee is foreclosed as a matter of law by the court's decision in *Braun v. Herbert*, 180 A.3d 482 (Pa. Super. Ct. 2018), which squarely rejected the precise argument made by Plaintiffs. Equally meritless is Plaintiffs' challenge to the SLC, with respect to the Environmental Demand, on the basis that Gary R. Heminger participated in two short initial meetings before leaving the SLC. Heminger left the SLC, in an abundance of caution, well before any substantive evaluation of the Environmental Demand and 17 months before the SLC reached its determination.

*Second*, Plaintiffs' assorted challenges to the SLC's good faith and the reasonableness of its investigation are based on nothing but speculation, and therefore cannot save their claims. For example, Plaintiffs speculate, without support or explanation, that Kathleen A. Ligocki was added to the SLC in an attempt to either "disguise" or "rectify" unidentified "trouble" the SLC was experiencing. Similarly, Plaintiffs fail to identify any unique information held by witnesses they claim should have been interviewed, much less any information that would have changed the SLC's determination. Plaintiffs' other arguments go to the weight accorded by the SLC to

---

[1] Unless otherwise defined, capitalized terms have the meaning ascribed to them in the SLC's opening brief.

various economic and non-economic factors in determining whether litigation was in PPG's best interests – judgments that indisputably are beyond the scope of the Court's review.

*Third*, Plaintiffs do not – and cannot – identify any basis warranting further discovery. The SLC produced all documents required by the Court's June 23, 2020 Order. Plaintiffs had ample opportunity to seek reconsideration of that Order to obtain broader discovery or court intervention to challenge the SLC's privilege determinations, but they declined to do so. Plaintiffs' belated request for more discovery in their opposition brief is improper and should be denied.

The Court should dismiss the Actions with prejudice.

## ARGUMENT

**I.      THE SLC MEMBERS ARE DISINTERESTED AND INDEPENDENT.**

Plaintiffs' challenges to the disinterestedness and independence of the SLC members are entirely speculative and contrary to controlling authority – as to both the Environmental Demand and the Accounting Demands.[2]

     **A.      The Environmental Demand.**

Plaintiffs do not dispute that Steven A. Davis, Faraci, Healey and Catherine R. Smith – the four members of the SLC when it adopted the Environmental Report – were disinterested.

---

[2] Under Section 7.13(d) of the ALI Principles of Corporate Governance, adopted by the Pennsylvania Supreme Court in *Cuker v. Mikalauskas*, 547 Pa. 600, 613 (1997), Plaintiffs bear the burden of proof for claims involving a breach of the duty of care, and for all other claims with respect to establishing that the board or committee as a group was not capable of objective judgment. The Court need not decide this issue, however, as dismissal of the Actions is warranted regardless of which party bears the burden of proof.

Plaintiffs' challenges to Heminger's brief service on the SLC and Faraci's independence are wholly without merit. (Opp'n 22-23.)[3]

Plaintiffs' suggestion that Heminger's brief tenure as a member of the SLC somehow calls into question whether the SLC was disinterested and independent is not supported by any evidence. (Opp'n 22-23.) Although the Board had no doubt about Heminger's ability to act independently and in the best interests of the Company, he left the SLC in an abundance of caution based on his connection to Charles E. Bunch, who was named in the Environmental Demand.[4] (Goodman Decl. Ex. 7.) In any event, Heminger served on the SLC only for the first two initial SLC meetings in the weeks following the receipt of the Environmental Demand: (*i*) a very brief meeting, lasting 10 minutes, in which the SLC retained counsel and appointed Faraci as Chair and (*ii*) a second meeting, lasting 25 minutes, in which Debevoise proposed a preliminary investigative plan and reviewed best practices for the conduct of an investigation by a special litigation committee. (Oddo Decl. Exs. A, D, E.) The September 20, 2018 Board resolution states that Heminger ended his service "before the SLC engage[d] in any substantive assessment" of the Environmental Demand, and Plaintiffs offer no facts to the contrary.

---

[3] Citations to "Mem." refer to the SLC's opening brief (Dkt. No. 26), citations to "Goodman Decl." refer to the Declaration of Mark P. Goodman (Dkt. No. 26-1), citations to "Opp'n" refer to Plaintiffs' opposition brief (Dkt. No. 49) and citations to "Oddo Decl." refer to the declaration of Stephen J. Oddo (Dkt. No. 49-1).

[4] Heminger was the CEO of Marathon Petroleum Corporation and Bunch served on the Compensation Committee of Marathon's Board of Directors. (Goodman Decl. Ex. 7; Opp'n 22 n.25.) Although Bunch was named in the Environmental Demand on the basis that he was the former CEO of PPG, there are no allegations in the demand, or in the subsequent *Lindsay* complaint, indicating that he was involved in the underlying misconduct. (Goodman Decl. Ex. 1 at 1; *Lindsay*, Dkt. No. 1.) Furthermore, the SLC's investigation found no evidence that Bunch was, in fact, engaged in any misconduct related to the Ford City site. (Goodman Decl. Ex. 11 at 28.) Separately, Plaintiffs note that SLC member Davis also served on Marathon's board, but Davis was not an *officer* of Marathon and therefore his salary was not determined by the Compensation Committee. (Opp'n 8 n.9.)

(Goodman Decl. Ex. 7.)  Plaintiffs' speculation that Heminger was "instrumental in developing the scope of the SLC's inquiry" is also contrary to the record.  (Opp'n 22.)  The June 15, 2018 SLC meeting minutes indicate that Debevoise presented a "preliminary investigative plan," and that the SLC "determined that it was satisfied" with Debevoise's plan.  (Oddo Decl. Ex. E.)  There is no suggestion that Heminger played any role at all in developing that preliminary plan or its scope.  Nor are Plaintiffs able to offer any reason why the remaining members of the SLC would not have been able to fully direct the investigation and come to their own independent determination during the 17 months after Heminger ended his service.[5]

Plaintiffs' challenge to Faraci's independence is incoherent.  (Opp'n 23.)  That Faraci had previously served as the Chairman and CEO of the International Paper Company, which did business with PPG, has nothing to do with independence for purposes of considering the Environmental Demand.  To the extent Plaintiffs are suggesting that Faraci was not independent of PPG, Plaintiffs misunderstand the independence requirement.  In considering a derivative demand, the issue is not whether a director is beholden to the company, but whether he or she is beholden to an interested party.  *See Braun*, 180 A.3d at 488 n.4 (noting that independence relates to whether committee members are "under the control of nonmembers").

B.   **The Accounting Demands.**

Plaintiffs' challenge to the disinterestedness of Faraci and Healey based on their service on the Board and/or the Audit Committee is contrary to controlling Pennsylvania law.  (Opp'n 12-17; Mem. 13.)  Under Pennsylvania law, "mere service on the board does not make the special litigation committee member 'interested.'"  *Braun*, 180 A.3d at 487 (quoting *LeMenestrel v. Warden*, 964 A.2d 902, 919 (Pa. Super. Ct. 2008)).  Plaintiffs contend that Faraci and Healy

---

[5]   Nor is there anything untoward about Heminger's participation in the selection of counsel, as Plaintiffs have done nothing to challenge Debevoise's independence.  (Opp'n 22.)

4

signed PPG's SEC filings and failed to ensure that they were accurate (Opp'n 13-14), but Pennsylvania law is clear that a director is *not* deemed interested if he or she is named as a defendant "based only on the fact that the director *approved of or acquiesced* in the transaction or conduct that is the subject of the action," and the complaint "does not otherwise allege *with particularity* facts that, if true, raise a significant prospect that the director would be adjudged liable to the corporation or its shareholders." *Braun*, 180 A.3d at 487 (quoting *LeMenestrel*, 964 A.2d at 919) (emphasis added).

Plaintiffs do not allege particularized facts indicating that Faraci or Healey had any involvement with, or knowledge of, the improper accounting entries made by certain employees at the direction of Mark Kelly, PPG's former Controller. As *Braun* makes clear, allegations that Faraci or Healey failed to discover Kelly's misconduct or to ensure the accuracy of PPG's financial statements are insufficient. Indeed, the *Braun* court rejected substantially identical allegations, finding inadequate allegations that the directors were members of the audit committee, "knowingly or recklessly made improper statements in [the company's] public filings concerning [its] internal controls and bad debt expenses," and "knowingly or recklessly utterly failed to implement an appropriate and adequate internal control system." *Id.* at 488 (internal quotations omitted). As the *Braun* court concluded, allegations that the audit committee was responsible for reviewing the company's financial reports and the adequacy and effectiveness of its internal controls do not indicate involvement with the underlying misconduct and do not plead with particularity that the directors are liable to the company. *Id.* at 488-89.

Plaintiffs have no substantive response to *Braun*, mentioning that decision only in passing in a footnote. (Opp'n 16 n.19.) Instead, Plaintiffs rely on *In re Comverse Technology, Inc. Derivative Litigation*, 56 A.D.3d 49 (N.Y. App. Div. 2008), which applies New York law

5

that is contrary to controlling Pennsylvania authority. (Opp'n 14.) Furthermore, the director described in Plaintiffs' opposition (Ron Hiram) was *not* found to be "interested" but instead fell within an entirely different exception to New York's derivative demand requirement, which has no application in Pennsylvania. *Comverse*, 56 A.D.3d at 53-54, 57; 15 Pa. C.S. § 1781(b).

Plaintiffs' challenge to the disinterestedness of Faraci and Healey also is not supported by the PPG Board's May 15, 2018 resolution appointing the SLC in response to the Environmental Demand. (Opp'n 13, 16.) That resolution stated that it was in the Company's best interest for the SLC to consist of "Board members who are not identified in the Demand Letter as potential defendants and who have no disqualifying personal or business relationships with the potential defendants or with the Company." (Goodman Decl. Ex. 6.) Unlike the Environmental Demand, the Accounting Demands named *all* of PPG's then-current directors as potential defendants. Although choosing board members not named in a demand letter has the advantage of avoiding the types of baseless challenges made by Plaintiffs here, merely being named in a demand letter is not disqualifying, as discussed above.[6] Here, the Board correctly concluded that it was completely appropriate for Faraci and Healey to address the claims alleged in the Accounting Demands because they are not identified therein "as having been directly involved in the alleged underlying misconduct" and had no disqualifying personal or business relationships. (Goodman Decl. Ex. 7.)

---

[6] As the commentary to the ALI Principles points out, "a broader rule that automatically disqualified such a director whenever the director was named as a defendant would create an incentive for the plaintiff to sue all the incumbent directors in order to disqualify them." ALI Principles of Corp. Governance § 7.09 cmt. g.

## II. THE SLC ACTED IN GOOD FAITH AND CONDUCTED A REASONABLE INVESTIGATION.

Plaintiffs' assertions regarding the SLC's good faith and the reasonableness of its investigations and determinations are contrived, entirely speculative and ignore the principal dictate of *Auerbach*: "While the court may properly inquire as to the adequacy and appropriateness of the committee's investigative procedures and methodologies, it may not under the guise of consideration of such factors trespass in the domain of business judgment." *Auerbach v. Bennett*, 393 N.E.2d 994, 1002 (N.Y. 1979); *see also* 15 Pa. C.S. § 1783 comm. cmt. (adopting the *Auerbach* standard for judicial review of the determination of a special litigation committee).

### A. The Addition of Ligocki to the SLC Is Not Indicative of Bad Faith.

Although Faraci and Healey were qualified in every regard to consider the Environmental and Accounting Demands, PPG's Board took the extra step of appointing new directors to the SLC when they joined the Board. Davis and Smith joined the SLC in April 2019, and Ligocki joined the SLC in April 2020. (Goodman Decl. Ex. 2 at 8; Oddo Decl. Exs. I, M.) The addition of these newly appointed directors, all of whom have extensive executive and board experience, can only have benefited the SLC's investigation and undermines, rather than supports, any suggestion of bad faith. (Goodman Decl. Ex. 2 at 8-11.)

Plaintiffs seek to portray the addition of Ligocki to the SLC as a negative development, based upon the wholly contrived assertions that the "SLC was having trouble carrying out its duties," and that Ligocki was added in an attempt to "disguise" or "rectify" those purported "troubles" but "had no meaningful role in the investigation." (Opp'n 17-18.) That is an obvious fabrication and Plaintiffs make no attempt to support it. It is also incorrect that Ligocki was added "a week before the Accounting Report . . . was approved by the SLC" or that she attended

7

"just a single meeting" before voting to adopt the report. (Opp'n 17, 19.) Ligocki attended SLC meetings on April 15, May 6 and May 19 (Oddo Decl. Exs. M-O), and she also participated in separate discussions with Debevoise on April 28 (Oddo Decl. Ex. N). Ligocki had ample opportunity to review any preliminary findings, ask questions, request that additional inquiries be made or otherwise direct the investigation to her satisfaction, and there is no basis to conclude that she was unable to make an informed, independent judgment regarding the Accounting Demands.

### B. Plaintiffs' Suggested Interviews Do Not Undermine the Reasonableness of the SLC's Investigation.

Plaintiffs' identification of people they believe should have been interviewed as part of the SLC's investigation do not provide grounds to overrule the SLC's determination, even under Plaintiffs' out-of-state and noncontrolling authority, because Plaintiffs do not demonstrate "that the un-interviewed individuals had knowledge that was unique and unobtainable without those interviews, and how those interviews if taken would have altered the board's decision to refuse demand." *City of Orlando Police Pension Fund v. Page*, 970 F. Supp. 2d 1022, 1032 (N.D. Cal. 2013) (internal quotations omitted).[7]

With respect to the Environmental Demand, Plaintiffs provide no reason why it was crucial for the SLC to have interviewed Robert Mehrabian, particularly in light of the fact it

---

[7] Plaintiffs criticize the SLC for allowing its counsel to conduct the interviews, but the opinion they cite recognizes that an SLC's "reliance on counsel is accepted practice" and did not object to the delegation of the task of conducting interviews. *See Peller v. The Southern Co.*, 707 F. Supp. 525, 529 (N.D. Ga. 1988), *aff'd*, 911 F.2d 1532 (11th Cir. 1990). The *Peller* court applied Delaware law, which involves the court substituting its own judgment for that of the corporation, and the fact that the interview memoranda were privileged impeded that inquiry. No such concern is present in this case because Pennsylvania has rejected the Delaware standard of review, and Pennsylvania courts therefore do not second guess a board's judgment as to whether the dismissal of derivative claims is in the corporation's best interest. *See* 15 Pa. C.S. § 1783 comm. cmt. (rejecting *Zapata Corp. v. Maldonado*, 430 A.2d 779 (Del. 1981)).

interviewed both Victoria Haynes, a member of the Technology and Environmental Committee during the time period between the 2009 Administrative Order and the initiation of the *PennEnvironment* litigation in 2012, and Steve Faeth, Corporate Counsel of the Company's Environmental, Health, and Safety group during the relevant time. (Goodman Decl. Ex. 11 at 10.) Plaintiffs do not identify any facts that only Mehrabian could have provided. Similarly, Plaintiffs' assertion that counsel for the plaintiffs in the *PennEnvironment* litigation would "likely know far more about these executives' potential liability" is unsupported by any evidence. (Opp'n 24.) And Plaintiffs' purported concerns about the application of privilege to the documents reviewed by the SLC ignores that the SLC also reviewed "internal PPG documents" regarding the Ford City site and engaged in numerous discussions with PPG officers and directors, as well as with Eckert Seamans, counsel for PPG in the *PennEnvironment* litigation. (Goodman Decl. Ex. 11 at 10-11.)

      As to the Accounting Demands, Plaintiffs similarly provide no basis to believe that an interview of PricewaterhouseCoopers LLP ("PwC") would have been particularly helpful, much less crucial to the SLC's investigation. As Plaintiffs acknowledge, PwC "failed to identify any of the accounting improprieties," and the possibility that PwC employees may have interacted with Kelly does not imply that they had "unique and unobtainable" information that would have impacted the SLC's determination. (Opp'n 19-20.) The SLC reviewed more than 10,000 documents, conducted numerous interviews, and reviewed materials developed by Wachtell during the course of its investigation, which also involved numerous interviews. (Goodman Decl. Ex. 2 at 13-14.) Moreover, the SLC's determination that the Accounting Demands lacked

9

merit except as to Kelly is fully supported by the SEC's investigation into the same events.[8] The SEC found that Kelly "directed his subordinates to improperly override the Company's internal controls" and that those directions were "not disclosed to others in senior management, the Audit Committee or the Company's independent registered public accounting firm." (SEC Order ¶ 26.)

**C. Plaintiffs Cannot Challenge the SLC's Cost Benefit Analysis.**

Plaintiffs' challenge to the SLC's weighing of the costs and benefits of litigation does nothing to undermine the reasonableness or good faith of the SLC's investigations and is, in any event, plainly improper because "the weighing and balancing of legal, ethical, commercial, promotional, public relations, fiscal and other factors" is a matter of business judgment and falls "outside the scope" of the Court's review. *Auerbach*, 393 N.E.2d at 1002.

With respect to the Environmental Report, Plaintiffs contend that the SLC's cost benefit analysis was "flawed" because it purportedly did not take into account factors that Plaintiffs believe are important. (Opp'n 24-25.) Under *Auerbach*, the Court "cannot inquire as to which factors were considered" by the SLC "or the relative weight accorded" to them. 393 N.E.2d at 1002. Moreover, the Environmental Report expressly does not, and is not required to, list every factor considered by the SLC. (Goodman Decl. Ex. 11 at 30.)

As to the Accounting Report, Plaintiffs' assertion that the SLC "downplayed" the significance of the accounting misconduct is without basis. More importantly, that Plaintiffs would place more emphasis on the size of the accounting entries – or measure them differently – cannot serve as a basis to deny the SLC's motion to dismiss. (Opp'n 20.) Furthermore, Plaintiffs' assertion that the SLC "trivialized" the accounting entries by stating – accurately –

---

[8] The SEC's September 26, 2019 order ("SEC Order") can be found at https://www.sec.gov/litigation/admin/2019/33-10701.pdf.

that they ranged from $500,000 to $6.8 million makes no sense. As the SEC agreed, the amount of the individual accounting entries and their impact on earnings per share is certainly relevant. (SEC Order ¶¶ 24-25.) Moreover, Plaintiffs' position rests on the false premise that PPG's stock price "declined 19%" when PPG disclosed the misconduct. To arrive at that figure, Plaintiffs inexplicably compare PPG's stock price on July 2, 2018 to its price on January 26, 2018 – almost five months *before* PPG disclosed the accounting issues. (Opp'n 6 (citing *Lee* Complaint ¶¶ 4, 60).)[9]

Plaintiffs also take issue with the SLC's decision not to adopt certain governance changes proposed in the Accounting Demands. This again falls squarely within the SLC's business judgment and does not relate to the reasonableness or good faith of the SLC's investigation. And, although Plaintiffs complain that the Accounting Report does not detail the remedial measures already taken by PPG, those measures are a matter of public record. The SEC Order states:

> PPG undertook remedial measures beginning immediately upon learning of the improper conduct. In addition to taking disciplinary actions with respect to individuals in the finance area involved in the conduct described above, PPG's management has enhanced review in the finance area, adjusted its organizational design by formally separating its financial forecasting process from its financial accounting process, and instituted enhanced training, policies and procedures to standardize and increase oversight in the high risk accounting areas where control weaknesses were identified.

(SEC Order ¶ 32.) Plaintiffs are aware of these changes because they cite the SEC Order in their brief. (Opp'n 6 & n.6.)

---

[9] Plaintiffs similarly exaggerate the size of the *PennEnvironment* lawsuit, claiming without any basis that it threatens to wreak "hundreds of millions of dollars of damages on PPG." (Opp'n 4.)

11

### III. THE COURT SHOULD DENY PLAINTIFFS' UNTIMELY AND IMPROPER REQUEST FOR ADDITIONAL DISCOVERY.

Plaintiffs' belated request for additional discovery, improperly made in an opposition brief, should be denied. Plaintiffs have already sought discovery, and the SLC produced all documents required by the Court's June 23 Order. (*Lee*, Dkt. No. 39.) Plaintiffs express concern about the SLC's privilege determinations, but those determinations were consistent with the Court's Order granting Plaintiffs' discovery request, which expressly permitted "Defendants to withhold or redact documents protected by the attorney-client privilege," and Pennsylvania law. (*Lee*, Dkt. No. 39; Opp'n 10 & n.13.)

Plaintiffs assert that the "SLC entirely redacted every document provided to the SLC concerning the Accounting Demands," but as the SLC informed Plaintiffs over a month ago when counsel for the parties met and conferred regarding this issue, the SLC redacted *drafts* of SLC meeting minutes, a *draft* SLC resolution, and *drafts* of the SLC reports. (Opp'n 10.) It produced the full, *final* versions of *all* of those documents. The SLC also redacted documents entitled "Preliminary Investigative Plan" and "Special Litigation Committee Best Practices" from the June 15, 2018 SLC meeting book on the basis that they reflect Debevoise's legal advice and work product regarding the SLC's investigation of the claims asserted in the Environmental Demand and the SLC's legal duties in connection with shareholder demands. *See Pittsburgh History & Landmarks Found. v. Ziegler*, 200 A.3d 58, 77 (Pa. 2019) ("[C]ommunications, both oral and written, between the board or committee and its counsel with respect to the subject matter of the action do not forfeit their privileged character . . . on the grounds that the action is derivative.") (quoting ALI Principles of Corp. Governance § 7.13(e)).

With respect to witness interviews, no transcripts exist and the SLC properly withheld attorney notes and summaries of those interviews that were drafted by a Debevoise lawyer and

12

fall squarely within the definition of attorney work product under Pennsylvania law. *See* Pa. R.C.P. 4003.3 (providing that "discovery shall not include disclosure of the mental impressions of a party's attorney or his or her conclusions, opinions, memoranda, *notes* or *summaries*, legal research or legal theories") (emphasis added).

Plaintiffs had every opportunity to challenge the SLC's privilege determinations since receiving the SLC's production and privilege log on July 22, 2020, or to seek reconsideration of the Court's June 23, 2020 Order regarding the scope of discovery. Plaintiffs chose not to do so and cannot now raise these issues in a bid to further delay the resolution of these Actions.

## **CONCLUSION**

For the reasons set forth herein, the SLC requests that the Actions be dismissed with prejudice.

Dated: Pittsburgh, Pennsylvania
September 24, 2020

FLANNERY | GEORGALIS, LLC

By: /s/ Colin J. Callahan

Colin J. Callahan
The Gulf Tower
707 Grant Street, Suite 1745
Pittsburgh, Pennsylvania 15219
(412) 254-8602

Mark P. Goodman (*pro hac vice*)
Elliot Greenfield (*pro hac vice*)
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
(212) 909-6000

*Attorneys for the Special Litigation Committee of the Board of Directors of PPG Industries, Inc.*