IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANNIA

| | |
|---|---|
| L. COURTLAND LEE, *Derivatively on Behalf of PPG Industries Inc.*,<br><br>　　　　*Plaintiff*,<br><br>v.<br><br>MICHAEL H. MCGARRY, *et al.*,<br><br>　　　　*Defendants*. | Civil Action No. 2:20-cv-75<br><br>Hon. William S. Stickman IV<br><br>Lead Case |
| ALEXANDER H. LINDSAY, JR. *et al.*,<br><br>　　　　*Plaintiffs*,<br><br>v.<br><br>MICHAEL H. MCGARRY, *et al.*,<br><br>　　　　*Defendants*. | Civil Action No. 2:20-cv-253<br><br>Member Case |
| BRENDA RUBIN *derivatively on behalf of PPG Industries, Inc.*,<br><br>　　　　*Plaintiff*,<br><br>v.<br><br>MICHAEL H. MCGARRY, *et al.*,<br><br>　　　　*Defendants*. | Civil Action No. 2:20-cv-313<br><br>Member Case |

1

**MEMORANDUM OPINION**

WILLIAM S. STICKMAN IV, District Judge

Pending before the Court is Defendants' Motion to Dismiss (ECF No. 25 at No. 2:20-cv-75; ECF No. 33 at No. 2:20-cv-253; ECF No. 6 at No. 2:20-cv-313) under Title 15 of Pennsylvania Consolidated Statute § 1783(e) (2017). Briefing is complete, and oral argument occurred on October 29, 2020. The matter is ripe for resolution. For the reasons set forth here, Defendants' Motion to Dismiss is granted.

**FACTUAL AND PROCEDURAL HISTORY**

Plaintiffs L. Courtland Lee, Alexander H. Lindsay Jr., Charles R. Blackburn and Brenda Rubin ("Plaintiffs") challenged nominal defendant's, PPG Industries, Inc. ("PPG"), Special Litigation Committee's ("SLC") decision not to pursue action in two separate Demand Actions ("Environmental Demand," "Accounting Demand" and collectively "Demand Actions"). (ECF No. 17 at No. 2:20-cv-75; ECF No. 29 at No. 2:20-cv-253; ECF No. 2 at No. 2:20-cv-313). Upon receipt of the first demand letter, PPG created the SLC to investigate the claims and determine the best strategy. (ECF No. 26, p. 5). After thorough investigation, the SLC decided to not pursue action based on any claims asserted and to dismiss the Actions.

**A.   Environmental Demand**

In April 2018, Plaintiffs Lindsay and Blackburn sent a demand letter asking PPG's Board to begin legal action against current and former officers and directors based on alleged noncompliance with environmental laws at PPG's former Ford City, Pennsylvania site ("Environmental Demand"). (ECF No. 26, p. 2; ECF No. 50-1, pp. 4–5). In the letter, Plaintiffs alleged that the named officers and directors violated a 2009 administrative order[1] from the

---

[1] PPG operated a 150-acre slurry site terraced above the Allegheny River in Ford City Pennsylvania. (ECF No. 50-1, pp. 8–9). In March 2009, the Pennsylvania Department of

Pennsylvania Department of Environmental Protection, which led to a lawsuit against PPG ("*PennEnvironment* Litigation"). *Id.*

**B.     Accounting Demand**

By letters from August 2018, November 2018 and July 2019, Plaintiffs demanded that PPG investigate and begin legal action against certain of its current and former officers and directors related to the June 2018 financial restatement ("Accounting Demands").

In April 2018, PPG received an anonymous tip through its internal reporting system alleging a failure to accrue certain expenses in the first quarter of 2018. (ECF No. 26, p. 2; ECF No. 50-1, p. 10). The Audit Committee of PPG's Board of Directors, with assistance from the law firm Wachtell, Lipton, Rosen & Katz ("Wachtell"), started an internal investigation and discovered $1.4 million of expenses that should have accrued in the first quarter of 2018. (ECF No. 26, pp. 6–7). In May 2018, PPG announced that it had identified additional improper accounting entries in the first quarter of 2018 and in quarters throughout 2017. (ECF No. 26, p. 7). The investigation uncovered that Mark C. Kelly, PPG's former Controller, Vice President and Principal Accounting Officer, had directed certain employees to create the improper accounting entries. *Id.* At the end of June 2018, PPG filed its Form 10-Q for the first quarter of 2018 and a Form 10-K/A for 2017, which corrected the previously issued financial statements from 2016 and 2017 and quarterly results for the fourth quarter of 2016 through the fourth quarter of 2017. *Id.*

In June 2019, PPG agreed to pay $25 million to settle a securities fraud class action lawsuit filed on behalf of its investors who bought PPG stock at artificially inflated prices. (ECF No. 50-1, p. 6).

---

Environmental Protection issued an administrative order requiring that PPG collect and treat the contaminated water it had discharged unabated from the site. *Id.*

In September 2019, PPG announced that it agreed to settle the charges brought by the U.S. Securities and Exchange Commission against the Company. *Id.* In the settlement, PPG admitted that "[f]rom December 2016 through April 2018, . . . PPG maintained materially inaccurate books and records and insufficient internal accounting controls" and that "[a]s a result, PPG's income from continuing operations in its published financial results was inflated." Order Instituting Cease-and-Desist Proceedings Pursuant to Section 8A of the Securities Act of 1933, at 2, *In the Matter of PPG Industries, Inc.*, SEC Administrative Proceeding File No. 3-19532 (Sept. 26, 2019). Although the SEC agreed not to impose a financial penalty, the SEC's enforcement division retained discretion to petition to reopen the matter and seek an order to direct PPG to pay a civil monetary penalty. (EFC No. 50-1, p. 6).

**C.     The SLC**

In May 2018, PPG's Board, under Title 15 of Pennsylvania Consolidated Statute Sections 1731 and 1783, appointed the SLC and delegated to it exclusive authority to investigate and to review and evaluate facts, circumstances, claims and actions demanded in the Environmental Demand. (ECF No. 26, p. 3). The Board tasked the SLC with determining whether, on behalf of the Company, pursuing the claims was in the Company's best interest. *Id.* The Board's resolutions provided the SLC authority to retain, at the Company's expense, legal counsel to assist in the investigation. (ECF No. 26, p. 8). The SLC engaged Debevoise & Plimpton LLP ("Debevoise") to assist in its investigation. (ECF No. 26, p. 8).

The Board initially appointed John V. Faraci, Gary R. Heminger and Melanie Healey to the SLC. (ECF No. 50-1, p. 12). Part of the Board's reasoning for including these three was that they had not been named in the Environmental Demand and had not served on the Board when the alleged wrongdoing occurred. *Id.* In September 2018, the Board voted to remove Heminger from the SLC. *Id.* At that time, Heminger was Chairman and CEO of Marathon Petroleum Corp. and

served with Charles E. Bunch, PPG's then-CEO named in the Environmental Demand, on Marathon's board. *Id.* And on that day, the Board voted to expand the SLC's investigatory powers to include the issues outlined in the Accounting Demands. *Id.* Faraci and Healey, although both had been named in the Accounting Demands, remained on the Committee. *Id.* at 12–13.

In April 2019, the Board voted to expand the SLC membership from two to four members. *Id.* at 13. The Board appointed Catherine R. Smith and Steven A. Davis in anticipation of PPG stockholders' approval of their joining the Board. *Id.* Smith and Davis participated in their first SLC meeting in July 2019. *Id.*

In February 2020, the SLC adopted the findings outlined in the Environmental Report and decided not to pursue claims asserted in the Environmental Demand. *Id.* Defendants claim that also on that day, the SLC considered adding a fifth member to the Committee, but the meeting minutes do not show that this discussion occurred. *Id.*

In April 2020, the Board expanded the SLC membership from four to five members and appointed Kathleen A. Ligocki. (ECF No. 26, p. 8; ECF No. 50-1, p. 13). That same day, PPG stockholders approved her appointment as a director to the Board. (ECF No. 50-1, p. 14). In early May 2020, Ligocki attender her first SLC meeting as a director. *Id.* As of the dates that the SLC reached its determinations and adopted reports on the Demands, it consisted of these members:

| Environmental Report (February 20, 2020) | Accounting Report (May 19, 2020) |
|---|---|
| Steven A. Davis | Steven A. Davis |
| John V. Faraci | John V. Faraci |
| Melanie L. Healey | Melanie L. Healey |
| Catherine R. Smith | Kathleen A. Ligocki |
|  | Catherine R. Smith |

*Id.* at 8.

The members of the SLC were sophisticated and qualified, and each had extensive executive and board experience.[2]

### D. The SLC's Conclusions

In late May 2020, the SLC unanimously voted to adopt the findings and conclusions of the accounting report and determined not to pursue the claims in the Demand Actions. (ECF No. 50-1, p. 14). All members of the SLC when it reached its determination for the Environmental Demand were elected to the Board after the *PennEnvironment* litigation started in March 2012. None was named in the Environmental Demand and none was alleged to have participated in the

---

[2] Davis joined the Board in April 2019. He sits on the Audit Committee and the Technology and Environment ("T&E") Committee. He had served as chair and chief executive officer of Bob Evans Farms, Inc. and serves or has served on many boards, including at Marathon Petroleum Corp., Albertsons Cos., Inc., the Legacy Acquisition Corp., CenturyLink, Walgreens Boots Alliance and the Sonic Corp. (ECF No. 26, p. 9).

Faraci joined the Board in October 2012. He sits on the Nominating and Governance ("N&G") Committee and the Officers-Directors Compensation Committee. He is executive chair and director of Carrier Global Corp., was the chair and chief executive officer of International Paper Co. and has served as a director for ConocoPhillips Co. and U.S. Steel Corp. and on the board of United Technologies Corp. *Id.*

Healey joined the Board in July 2016. She sits on the N&G Committee and the T&E Committee. She has worked in the consumer goods industry for over thirty years with S.C. Johnson & Sons, Johnson & Johnson and The Procter & Gamble Co. and serves on the boards of Hilton Worldwide Holdings Inc., Verizon Communications Inc. and Target Corp. *Id.*

Ligocki joined the Board in April 2020. She sits on the Audit Committee and the T&E Committee. She had served as chief executive officer of Agility Fuel Solutions, LLC and Harvest Power, Inc., has held senior management positions at Ford Motor Co., United Technologies Corp. and General Motors Corp. and currently serves on the boards of Lear Corp. and Carpenter Technology Corp. *Id.*

Smith joined the Board in April 2019. She is member and Chair of the Audit Committee and member of the T&E Committee. She is chief financial and administrative officer of Bright Health Inc., has served in leadership roles such as chief financial officer of the Walmart International segment of Wal-Mart Stores, Inc., GameStop Corp., Centex Corp. and serves on the board of Baxter International Inc. *Id.*

events leading to the litigation. (ECF No. 26, p. 10). As for the Accounting Demands, three of the five members—Davis, Smith and Ligocki—were elected to the Board after PPG's June 2018 accounting restatement and had not been named in the Accounting Demands or alleged to have participated in the events leading to the restatement. *Id.*

E.  **Procedural History**

The derivative action *Lee v. McGarry* commenced in January 2020. (ECF No. 1). *Lindsay v. McGarry* and *Rubin v. McGarry* followed in February and March, respectively. The SLC moved to stay *Lee* for six months. (ECF No. 4). The Court granted the SLC's motion but limited the stay to three months and ordered a response from the SLC by May 29, 2020. (ECF No. 12). In March 2020, the Court consolidated the actions. (ECF No. 19). The SLC filed a Notice of Determination and moved to dismiss Derivative Actions. (ECF No. 25 at No. 2:20-cv-75; ECF No. 33 at No. 2:20-cv-253; ECF No. 6 at No. 2:20-cv-313).

The Court ordered the SLC to produce materials, which it did. (ECF No. 39). Plaintiffs responded in opposition to the SLC's Motion to Dismiss. (ECF No. 50). Defendants replied in support of its Motion to Dismiss. (ECF No. 51).

**STANDARD OF REVIEW**

When a business corporation or its board of directors receives demand to bring action to enforce a right of the corporation, the board may appoint a SLC to investigate the asserted claims and determine whether the board should pursue action. 15 Pa. Cons. Stat. § 1783(a).[3] After

---

[3] Plaintiffs argue the Pennsylvania legislature recently enacted § 1783 and that no current case law directly addresses the statute. The Pennsylvania Supreme Court acknowledged this fact in its recent decision in *Pittsburgh History & Landmarks Foundation v. Ziegler*, 200 A.3d 58 (2019), and recognized the new law as a codification of the factors the Pennsylvania Supreme Court laid out in *Cuker v. Mikalauskas*, 692 A.2d 1042 (Pa. 1997). "These provisions generally codified, with some alterations, preexisting Pennsylvania jurisprudence, as adopted in *Cuker,* regarding derivative actions." *Pittsburgh Hist.*, 200 A.3d at 62. The court in *Cuker* prescribed these factors to consider when analyzing a motion to dismiss: (i) whether the board or its litigation committee

7

appropriate investigation, the committee may make several recommendations, including a recommendation not to pursue the action demanded. § 1783(e). Such recommendations "regarding litigation by or on behalf of a corporation, including shareholder derivative actions, are business decisions . . . within the province of the board of directors." *Cuker v. Mikalauskas*, 692 A.2d 1042, 1048 (Pa. 1997); *see also In re PNC Fin. Servs. Grp., Inc. Derivative Litig.*, No. GD-14-009602, 2015 Pa. Dist. & Cnty. Dec. LEXIS 15240 (Pa. Ct. C.P., Allegheny Cnty. Sept. 17, 2015) (granting motion to dismiss based on SLC's recommendation); *In re H.J. Heinz Co. Derivative & Class Action Litig.*, No GD-13-003108, 2013 WL 1905075 (Pa. Ct. C.P., Allegheny Cnty. Apr. 29, 2013) (same).

For the SLC's recommendation to be protected by the business judgment rule and immune from the Court's review, the committee must consist of two or more individuals who (i) are not interested in the claims in the demand, (ii) are capable as a group of objective judgment in the circumstances and (iii) may, but need not, be shareholders or directors. § 1783(d). "The burden of proving that these procedural requirements have been met must rest, in all fairness, on the party capable of making that proof—the [entity]." § 1783 cmt. (quoting *Houle v. Low*, 556 N.E.2d 51, 58 (Mass. 1990)).

If the committee determines that no action is required, the Court will first determine whether the members of the committee were disinterested and capable as a group of objective judgment in the circumstances. § 1783(f)(3). The Court will then decide whether the committee conducted its investigation and made its recommendation in good faith, independently and with

---

was disinterested, (ii) whether counsel assisted the committee, (iii) whether the committee prepared a written report, (iv) whether the committee was independent, (v) whether the committee conducted an adequate investigation and (vi) whether the committee acted in good faith. 692 A.2d at 1048.

reasonable care. *Id.* If the Court determines that the SLC has met the qualifications of the statute, then the business judgment rule applies, and the Court may not evaluate the SLC's decision. § 1783(f)(3). If, though, the Court determines that the qualifications have not been satisfied, the Court may permit stockholder Plaintiffs to make discovery or pursue derivative claims on behalf of the company. § 1783(f)(3)(i)–(iii).

Here, after reviewing the record, the Court has determined that the members of PPG's SLC were independent and disinterested. The SLC conducted a reasonable investigation and made its recommendation in good faith, independently and with reasonable care. For these reasons, the business judgment rule applies, which immunizes the SLC's determination from further review by the Court.

## ANALYSIS

### A. The SLC members were independent and disinterested and therefore capable of objective judgment.

Because PPG's SLC recommended taking no action, the Court must first determine whether the SLC members were independent and disinterested. The court in *LeMenestrel v. Warden*, 964 A.2d 902, 918–19 (Pa. Super. 2008), distilled the analysis for determining committee member independence into four factors. A director is interested if

> (1) the director or officer, or an associate [§ 1.03] of the director or officer, is a party to the transaction or conduct;
>
> (2) the director or officer has a business, financial, or familial relationship with a party to the transaction or conduct, and that relationship would reasonably be expected to affect the director's or officer's judgment with respect to the transaction or conduct in a manner adverse to the corporation;
>
> (3) the director or officer, an associate of the director or officer, or a person with whom the director or officer has a business, financial, or familial relationship, has a material pecuniary interest in the transaction or conduct (other than usual and customary directors' fees and benefits) and that interest and (if present) that relationship would reasonably be expected to affect the director's or officer's judgment in a manner adverse to the corporation; or

9

> (4) the director or officer is subject to a controlling influence by a party to the transaction or conduct or a person who has a material pecuniary interest in the transaction or conduct, and that controlling influence could reasonably be expected to affect the director's or officer's judgment with respect to the transaction or conduct in a manner adverse to the corporation.

*Id.* at 918–19 (Pa. Super. 2008) (quoting 2 A.L.I., Principles of Corporate Governance, § 1.23 (1994)).[4] The second, third and fourth factors are inapplicable under these circumstances. Neither the SLC members nor any of their associates or family members have material pecuniary interests in the allegations made in the Demands or relationships with any party named in the Demands that could reasonably expected to affect the SLC members' judgment in a way adverse to the Company. (ECF No. 26, p. 17–18). The Court thus focuses on the first factor.

Under the first factor, the Court must consider the totality of the circumstances in determining director independence. "[M]ere service on the board does not make the special litigation committee member 'interested.'" *LeMenestrel*, 964 A.2d at 919. "[T]he extent of a director's knowledge of, or complicity in, a disputed act is not self-evident based on his or her status as a director." *Braun v. Herbert*, 180 A.3d 482, 487 (Pa. Super. 2018) (quoting *LeMenestrel*, 964 A.2d at 919). A director named as a defendant because he or she "approved or acquiesced in" the alleged misconduct is not interested unless the demand letters "allege *with particularity* facts

---

[4] The commentary to Title 15 of Pennsylvania Consolidated Statute § 1783 references *Einhorn v. Culea*, 612 N.W.2d 78, 91 (Wis. 2000), for how courts should approach the question of independence. The court in *Einhorn* analyzed committee member independence through a lens of the totality of the circumstances. 612 N.W.2d at 91. Courts should consider (1) a committee member's status as a defendant and potential liability; (2) a committee member's participation in or approval of the alleged wrongdoing or financial benefits from the challenged transaction; (3) a committee member's past or present business or economic dealings with an individual defendant; (4) a committee member's past or present personal, family or social relationships with individual defendants; (5) a committee member's past or present business or economic relations with the corporation; (6) the number of members on the committee; and (7) the roles of corporate and independent counsel. *Id.*

that, if true, raise a significant prospect that the director would be adjudged liable to the corporation or its shareholders." *Id.* (quoting *LeMenestrel*, 964 A.2d at 919).

### 1) The directors were disinterested in the Environmental Demands.

Plaintiffs claim Heminger's brief service on the SLC is a challenge to the Committee's independence. (ECF No. 50-1, p. 27). Heminger, at the time of his appointment to the Committee, was Chairman and CEO of Marathon where PPG's then-CEO, Bunch, was also on the board of directors. *Id.* Heminger also served on the SLC when it selected Debevoise as counsel in a May 2018 meeting. *Id.* Heminger attended a meeting in June 2018 where the SLC considered a preliminary investigative plan. *Id.* Plaintiffs claim that Heminger was instrumental to the development of the Committee's plan and that they did not deviate from this plan even after his departure. *Id.*

Defendants assert that Heminger's short service on the SLC is not grounds to challenge the SLC's independence. (ECF No. 51, p. 7). To be safe, Heminger left service in the SLC because of his connection to Bunch. *Id.* Heminger was present for two meetings, one lasting ten minutes and the other lasting twenty-five minutes. *Id.* At the first meeting, the SLC appointed Faraci as Chair, and in the second meeting, Debevoise proposed a preliminary investigative plan. (ECF No. 51, p. 7).

Heminger's initial involvement with the SLC does not show that the Committee was interested. No evidence suggests that Heminger played any role in developing the preliminary plan nor does it suggest that the remaining members were unable to conduct their business independently. The SLC completed its investigation seventeen months after Heminger's departure from the SLC. No facts challenge Debevoise's independence nor articulate any reason why Debevoise's involvement would taint the independence of the Committee. Thus, the Court holds

that Heminger's short tenure on the SLC does not rise to the level of interest required to review the SLC's decision.

Plaintiffs also challenge Faraci's independence. (ECF No. 50-1, p. 28). Faraci served as the Chairman and CEO of International Paper Co. ("International Paper") until his retirement in 2014. Plaintiffs claim that because PPG and International Paper have extensive business transactions, Faraci will feel beholden to PPG, through its business dealings with International Paper, and be unable to act as a disinterested member. Although Faraci retired in 2014, Plaintiffs claim that he depends on International Paper for his retirement, stock investments and any long-term medical or other benefits. *Id.* Specifically, they claim that because International Paper conducted business with PPG, Faraci's involvement between the two companies is enough to make him an interested member.

Defendants argue that Faraci's connection to International Paper is unhelpful for determining Faraci's independence. When considering a derivative demand, the Court should consider whether a director is beholden to an interested party, not to a company. *See Braun*, 180 A.3d at 488 n.4 (remarking that member independence relates to whether a committee member is "under the control of nonmembers"). Plaintiffs' strained analysis of Faraci's independence creates a hair-trigger response. Adopting the reasoning that Faraci's involvement with International Paper rises to the level of being interested would conflict out any person who was a corporate agent or officer in any company in the substantial web of business contacts of PPG. Were the Court to adopt Plaintiffs' reasoning, the ramifications would be far reaching and extend beyond the bounds of both accepted law and corporate practice. The Court holds that Faraci's involvement with International Paper does not make him an interested member.

### 2) The directors were disinterested in the Accounting Demands.

Plaintiffs allege that the two founding members of the SLC—Faraci and Healey—were directly involved in the alleged wrongdoing because they were named in the Accounting Demands and had served on the Audit Committee. (ECF 50-1, p. 19). While on the Audit Committee, they oversaw the Company's financial statements. *Id.* Healey and Faraci also personally signed PPG's 2016 and 2017 Forms 10-K, which were both found to be incorrect. *Id.*

Defendants contend that Plaintiffs have not alleged particularized facts showing that Faraci or Healey were involved or knew about the improper accounting entries made by employees at the direction of Kelly. (ECF No. 51, p. 9). Defendants turn to the Pennsylvania Superior Court's reasoning in *Braun v. Herbert*, 180 A.3d 482 (Pa. Super. 2018). There, the Pennsylvania Superior Court found, under similar facts, that the defendants did not "knowingly or recklessly [make] improper statements in [the company's] public filings," nor had they "knowingly or recklessly utterly failed to implement an appropriate and adequate internal control system." *Id.* at 488.

Serving on the board, even during the alleged wrongdoing, does not automatically make a committee member interested. *Id.* at 487. "Simply put, the extent of a director's knowledge of, or complicity in, a disputed act is not self-evident based on his or her status as a director. A director, particularly an outside director, is not necessarily aware of mistakes that occur at lower levels of the company." *Id.* The court in *Braun* concluded that just because an audit committee reviewed the company's financial reports does not mean the committee was involved with the misconduct. *Id.* at 488–89. Merely naming the directors who were on the audit committee does not plead with particularity that the directors are liable to the company. *Id.* The Accounting Demands named all of PPG's then-current directors as potential defendants. (ECF No. 51, p. 10). Faraci and Healey could not address the claims alleged in the Accounting Demands because they

13

were not identified "as having been directly involved in the alleged underlying misconduct" and had no disqualifying personal or business relationships. *Id.*

Plaintiffs must allege particularized facts suggesting that the committee members knew the improper accounting entries, and they have not done so here. *Id.* The Court holds that the members of the audit committee for the Audit Demand were disinterested because no facts in the record suggest that they had actual involvement in the creation of the Audit Reports.

### B. The SLC conducted its investigation in good faith, independently and with reasonable care.

Under Pennsylvania law, the Court may analyze whether the SLC "conducted its investigation and made its recommendation in good faith, independently and with reasonable care." § 1783(f)(3). The standard for judicial review of a committee's decision follows the analysis of the court in *Auerbach v. Bennett*, 393 N.E.2d 994 (N.Y. 1979). The SLC's "substantive evaluation of the problems posed and its judgment in their resolution is beyond [the court's] reach." *Id.* at 1002. The Court, though, may study the "adequacy and appropriateness." *Id.*

#### 1) The SLC conducted its investigation into the Accounting Demands in good faith.

Plaintiffs claim the SLC's investigation was "so *pro forma* or halfhearted as to constitute a pretext or sham . . . ." *Id.* at 1003. Plaintiffs cite the fact that the SLC met eleven times over two years. (ECF No. 50-1, p. 22). Their meetings totaled to less than nine hours. *Id.* Plaintiffs also attack the viability of the Accounting Report claiming that it has many deficiencies including (i) that it tried to mask its members' lack of impartiality; (ii) that the SLC failed to interview key witnesses; and (iii) that the Report showed efforts to downplay key evidence and adverse facts. *Id.*

Under the first claim, Plaintiffs assert that the decision to add Ligocki to the Committee shows that the SLC did not conduct its investigation in good faith. (ECF No. 50-1, p. 23).

14

Plaintiffs claim that the Board added her to the Committee because it was having trouble carrying out its duties impartially. *Id.* They also argue that Ligocki was unprepared and unable to carry out her duties appropriately. *Id.*

Defendants assert that adding new members, including Ligocki, all of whom have extensive executive and board experience, benefitted the SLC's investigation and undermines any suggestions of bad faith. (EFC No. 51, p. 11). Defendants highlight that nothing in the record suggests that the Committee had trouble carrying out its duties. *Id.* To rebut Plaintiffs' claim that Ligocki was ill-prepared to deliberate, Defendants cite the fact that Ligocki attended SLC meetings on April 15, May 6 and May 19, 2020 (ECF No. 51, p. 12) and met with Debevoise on April 28, 2020. (ECF No. 51, p. 12). Defendants claim she had more than enough preparation to provide impartial input. *Id.* Considering the balance of the facts, the Court holds that Ligocki's addition to the committee is not evidence of impropriety or incompetence of the SLC.

Under Plaintiffs' second claim, Plaintiffs argue the SLC should have interviewed PricewaterhouseCoopers ("PwC"), PPG's outside auditor. (ECF No. 50-1, p. 24). Plaintiffs point to a case to show that the failure to interview any reasonable investigator deemed essential to an investigation is unreasonable. *City of Orlando Police Pension Fund v. Page*, 970 F. Supp. 2d 1022, 1032 (N.D. Cal. 2013). Plaintiffs claim that PwC could have provided critical context for the actions of key individuals during the fraudulent activity. (ECF No. 50-1, p. 24). PwC remains PPG's outside auditor and could attest to whether current remedial measures are appropriate. (ECF No. 50-1, pp. 24–25).

Defendants point out that Plaintiffs have not shown a reason why the witnesses they identified should have been interviewed. (ECF No. 51, p. 13). Plaintiffs do not support their assertion that PwC was essential to the investigation or that it had specialized knowledge. *City of*

15

*Orlando Pension Fund*, 970 F. Supp. 2d at 1032. Plaintiffs even acknowledged that PwC, itself, "failed to identify any of the accounting improprieties." (ECF No. 24). The SLC reviewed more than 10,000 documents, conducted many interviews and reviewed materials developed by Wachtell during its investigation. (ECF No. 51, p. 13). Defendants also point to the SEC's investigation into the accounting practices under Kelly to assert that its investigation was appropriate. (ECF No. 26, p. 12). The SEC found that Kelly "directed his subordinates to improperly override the Company's internal controls" and that these directions "were not disclosed to others in senior management, the Audit Committee or the Company's independent registered public accounting firm." SEC Administrative Proceeding File No. 3-19532. The Court holds that the decision not to engage interviewing PwC does not show a lack of diligence.

Plaintiffs also argue the SLC and its counsel downplayed the significance of PPG's fraudulent accounting practices. (EFC No. 50-1, p. 25). The Committee dismissed many of the accounting errors as not material. *Id.* The amounts ranged between $500,000 and $6.8 million. *Id.* Plaintiffs are not concerned about the size the accounting errors but that the accounting errors allowed PPG to meet consensus analyst estimates. *Id.*

Defendants assert that the SLC's interpretation of the financial reports is not a basis for denying the Motion to Dismiss. (ECF No. 51, p. 10). Such analysis is improper because "the weighing and balancing of legal, ethical, commercial, promotional, public relations, fiscal and other factors" fits within the business judgment rule and is "outside the scope" of court review. *Auerbach*, 393 N.E.2d at 1002. The Court agrees and holds that the review of this matter is beyond the purview of the Court.

### 2) The SLC conducted its investigation into the Environmental Demands in good faith.

Plaintiffs claim the SLC wrongfully refused the Environmental Demand and failed to conduct an adequate investigation. (ECF No. 50-1, p. 26). They contend that the SLC should have interviewed Dr. Robert Mehrabian, Chair of the Technology and Environment Committee of the Board, who reported to the Board for PPG's environmental audits. Plaintiffs also claim the SLC should have interviewed the plaintiffs' counsel in the *PennEnvironment* Action. Plaintiffs try to argue that the cost-benefit analysis relied on by the SLC is flawed. (ECF No. 50-1, p. 29).

Defendants dismiss Plaintiffs' claim that the SLC should have interview Dr. Mehrabian and the plaintiffs' counsel in the *PennEnvironment* litigation. (ECF No. 51, p. 13). The SLC interviewed other members of the Technology and Environment Committee of the Board. *Id.* The record does not suggest that Dr. Mehrabian or the plaintiffs' counsel in the *PennEnvironment* litigation had knowledge helpful for the SLC, and there does not appear to be need for these people to be included in the investigation. The review of the cost-benefit analysis used by the SLC is also beyond the Court. The Court holds that Defendants conducted a reasonable investigation into the Environmental Demands in good faith.

### C. Plaintiffs request for additional discovery is denied.

Plaintiffs request that if the Court grants Defendants' Motion to Dismiss, the dismissal should be without prejudice so that Plaintiffs may conduct more discovery. Plaintiffs challenged the SLC's privilege determinations of the information it provided.

Defendants assert that the privilege determinations reflected this Court's Order granting Plaintiffs' discovery request. The Order permitted "Defendants to withhold or redact documents protected by the attorney-client privilege" and Pennsylvania law. (ECF No. 39, p. 2). Although the SLC redacted drafts of SLC meeting minutes, a draft of the SLC resolution and drafts of the

17

SLC reports, it produced full, final versions of all these documents. The SLC redacted documents entitled "Preliminary Investigative Plan" and "Special Litigation Committee Best Practices" from the June 15, 2018 SLC meeting book because they reflected Debevoise's legal advice and work product. *See Pittsburgh Hist.*, 200 A.3d 58, 77 (Pa. 2019) ("[C]ommunications . . . between the board or committee and its counsel with respect to the subject matter of the action do not forfeit their privileged character . . . on the grounds that the action is derivative"). Plaintiffs never brought to the Court's attention its issue with the discovery materials Defendants provided to them. The Pennsylvania Supreme Court found that a trial court should only grant discovery

> if the plaintiff has demonstrated that a substantial issue exists whether the applicable standards of § 7.08, § 7.09, § 7.10, § 7.11, or § 7.12 [of the A.L.I. Principles of Corporate Governance] have been satisfied and if the plaintiff is unable without undue hardship to obtain the information by other means.

*Id.* at 76–77 (quoting A.L.I., Principles of Corporate Governance, § 7.13(c)). The Pennsylvania Supreme Court also cautioned courts to grant limited discovery "in the absence of special circumstances." *Id.* Plaintiffs have not shown a compelling reason for the Court to grant more discovery. Defendants have met their burden to show that the SLC members were disinterested and that they conducted its investigation in good faith. Plaintiffs are thus denied opportunity for more discovery.

## CONCLUSION

For the reasoning set forth here, Defendants' Motion to Dismiss (ECF No. 25 at No. 2:20-cv-75; ECF No. 33 at No. 2:20-cv-253; ECF No. 6 at No. 2:20-cv-313) is granted. Plaintiffs' motion for further discovery is denied.

BY THE COURT:

**WILLIAM S. STICKMAN IV**
**UNITED STATES DISTRICT JUDGE**